133 P.3d 815

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Fua SALE, a.k.a. Tuma Puallia, and Liufau Toia, Defendant–Appellant.**

**No. 26293.**

Intermediate Court of Appeals of Hawai'i.

March 28, 2006.

As Corrected April 18, 2006.

Certiorari Denied May 9, 2006.

being hit by errant shots.

Edward K. Harada, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Ryan Yeh, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE, and NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

Defendant–Appellant Fua Sale (Sale) appeals from the Judgment filed on October 22, 2003, in the Circuit Court of the First Circuit (the circuit court).[1] A jury found Sale guilty as charged of Unauthorized Control of a Propelled Vehicle (UCPV), in violation of Hawaii Revised Statutes (HRS) § 708–836 (Supp.2005).[2] The circuit court sentenced

---

1. The Honorable Richard K. Perkins presided.

2. Hawaii Revised Statutes (HRS) § 708–836 (Supp.2005) provides, in relevant part, as follows:

(1) A person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or

by changing the identity of the vehicle without the owner's consent.

(2) "Propelled vehicle" means an automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle.

. . . .

(4) For the purposes of this section, "owner" means the registered owner of the propelled vehicle or the unrecorded owner of the vehicle

Sale to five years' imprisonment with a mandatory minimum term of twenty months based on his status as a repeat offender.[3] On December 9, 2003, Sale filed a motion to extend the time to file a notice of appeal. The circuit court granted Sale's motion and he filed a timely notice of appeal on December 19, 2003.

Sale was arrested and charged with UCPV after a police officer observed Sale driving a stolen car. Sale's defense at trial was that he had been given the car by his nephew, Shawn Tela (Tela), who Sale believed was the car's owner.

On appeal, Sale argues that the circuit court erred in: 1) denying Sale's request to call Tela to have Tela invoke his privilege against self-incrimination in front of the jury; 2) denying Sale's request to call Tela to answer limited questions about his relationship with Sale; 3) precluding a witness from testifying about statements Tela made during a defense interview; 4) requiring Sale to testify before resolving whether Tela would testify for the defense; and 5) instructing the jury on the material elements of the UCPV offense. We affirm.

## BACKGROUND

### A. Evidence Presented at Trial

On September 23, 2002, Kristen Przewlocki (Przewlocki) parked her gray 1990 Toyota Camry at a metered stall on Kukui Street behind Long's Drug Store. When she left the car, there was no damage to its door locks or steering column. Przewlocki returned 90 minutes later to find that the car had been stolen. Przewlocki immediately reported the theft to the Honolulu Police Department (HPD) and GEICO Insurance Company (GEICO). On October 16, 2002, GEICO paid Przewlocki $4,000 and assumed ownership of the stolen Camry.

In the afternoon on October 19, 2002, HPD Officer Michael Lucas–Medeiros (Officer Lucas–Medeiros) was on patrol in Lualualei Beach Park. A gray Toyota Camry operated by Sale pulled into a parking stall in front of the officer's car. Officer Lucas–Medeiros noticed that the Camry had an expired tax decal and decided to investigate. He called in the Camry's rear license plate number to HPD dispatch and learned that the license plate belonged to a Chevy van.

Officer Lucas–Medeiros saw Sale exit the Camry from the driver's door and another man exit from the front passenger door. The two men sat on a nearby retaining wall. Officer Lucas–Medeiros asked Sale for his driver's license and the registration and other paperwork for the Camry. Sale responded that he did not have a driver's license, that the car did not belong to him, and that he did not have any paperwork for the car. Officer Lucas–Medeiros also asked Sale for personal identifying information. Sale gave the officer a false name, "Liufau Utoia," as well as a false date of birth and social security number.

Officer Lucas–Medeiros inspected the Camry and observed that the door locks on the driver's side and front passenger side had been damaged or "plunged" so that the doors could be opened without a key. The car's plastic ignition housing had been removed and the key in the ignition was not a Toyota key. In addition, the Vehicle Identification Number (VIN) that should have been on the dashboard had been pushed below the dashboard. Officer Lucas–Medeiros testified that the damage to the door locks, the ignition housing, and the dashboard VIN number were all readily visible.

Officer Lucas–Medeiros eventually retrieved the Camry's VIN number from another location inside the driver's door frame. He relayed the VIN number to HPD dispatch and was advised that the car had been

---

pending transfer of ownership; provided that if there is no registered owner of the propelled vehicle or unrecorded owner of the vehicle pending transfer of ownership, "owner" means the legal owner.

**3.** Defendant–Appellant Fua Sale (Sale) was on probation for the offense of Assault in the Second Degree (Assault II) at the time he allegedly com-

mitted the instant Unauthorized Control of a Propelled Vehicle (UCPV) offense. While sentencing Sale on the UCPV offense, the Circuit Court of the First Circuit (circuit court) also revoked Sale's probation on the Assault II conviction and sentenced him to a concurrent five-year term of imprisonment.

reported as stolen. Sale was arrested and charged with UCPV. The car was later identified as the 1990 Camry that had been stolen from Przewlocki and whose ownership had been transferred to GEICO. On October 19, 2002, the date of Sale's arrest, GEICO was the registered owner of the 1990 Camry and had not given permission to anyone, including Sale, to drive the car.

Sale testified in his own defense at trial.[4] Sale stated that Tela was the nephew of Sale's wife. According to Sale, Tela gave Sale the gray 1990 Toyota Camry so that Sale could use its parts to fix a 1988 Camry that belonged to Sale's wife. Sale testified that he believed Tela was the legal owner of the 1990 Camry and did not know the car was stolen. Sale knew that Tela had a Plymouth but had never seen Tela driving the 1990 Camry. Sale knew that Tela's employment was sporadic.

Sale stated that the motor on his wife's 1988 Camry was broken, so he intended to replace the motor with parts from the 1990 Camry. When asked on cross-examination why he would dismantle a newer Camry that worked to fix an older, broken Camry, Sale claimed that the older Camry was in better shape. He admitted knowing, however, that the 1990 Camry did not have "papers" and therefore it was not a car he could keep. In contrast, Sale had "papers" for his wife's 1988 Camry.

Sale stated on cross-examination that he knew he did not have permission from the "registered owner" of the 1990 Camry to drive that car. But on redirect examination, Sale stated that he did not know who the registered owner of the 1990 Camry was and reiterated that he thought Tela owned the 1990 Camry. Sale testified that he possessed the 1990 Camry somewhere between one and four days before being arrested. When he was arrested on October 19, 2002, he was driving the 1990 Camry on his way to buy cigarettes and food with his friend Alex. Sale claimed that he had not inspected the 1990 Camry closely before driving it. He denied

noticing anything wrong with the car's door locks or ignition. Sale acknowledged that he gave Officer Lucas–Medeiros a false name, birth date, and social security number. He claimed that he did so, not because he knew the 1990 Camry was stolen, but to avoid being arrested on an outstanding bench warrant for a traffic violation.

### B. The Timing of Sale's Testimony

Prior to trial, Sale's counsel advised the circuit court that she thought Sale would testify in the case. The State of Hawai'i (the State) rested its case in chief just before the lunch recess on the first day of trial. After lunch, in response to the circuit court's inquiry, Sale stated that he was going to testify.

Sale's counsel advised the court that Tela, whom the defense had subpoenaed and planned to call as its first witness, had failed to appear. Tela had come to the courtroom that morning but had been ordered by the court to return at 1:30 p.m. In response to the court's order, Tela protested that he had been "waiting long time already." He also told the court, "I like witness that [Sale] didn't steal the car. One other guy gave me the car. And I bought the car off the other guy for 200." The court informed Tela that he would have to come back at 1:30 p.m. and "say all those things under oath in front of the jury."

In light of Tela's non-appearance in the afternoon, Sale's counsel asked the court to either permit Alan Komagome (Komagome)[5] to testify about what Tela said during a prior defense interview or issue a bench warrant for Tela and grant a continuance. The Deputy Prosecuting Attorney (DPA) suggested that the court wait until 2:00 p.m. to see if Tela appeared, and if he did not, the court could issue a bench warrant and reconvene two days later on the next scheduled trial day. The circuit court and Sale's counsel then had the following discussion:

---

4.  Sale testified in English. Sale stated that Samoan was his first language but that he understood English well enough to testify in English.

5.  Sale was represented by the Office of the Public Defender. Alan Komagome (Komagome) was a Deputy Public Defender but was not Sale's counsel at trial.

THE COURT: Well, we can wait till 2 o'clock. But is there any reason why the defendant can't testify today?

[SALE'S COUNSEL]: No.

THE COURT: So we're going to move on if [Tela is] not here. In fact, if he's not here now, why don't we go ahead with Mr. Sale and then maybe he'll be here by the time Mr. Sale's finished. If he's not, then we'll just stop everything till Thursday, because we're going to have to settle instructions and things like that anyway.

[SALE'S COUNSEL]: Okay. Can I get—I do want Mr.—technically I do want Mr. Tela on first.

THE COURT: I understand you want him on first, but in the interest of not wasting time, I think I'll require you to proceed with your case.

[SALE'S COUNSEL]: Okay. I'll just note my preference for the record. That's all.

THE COURT: Yes.

Sale's counsel was given a last opportunity to look for Tela outside the courtroom. When Tela could not be found, Sale took the stand. Sale completed his testimony that afternoon and the court excused the jury.

### C. Tela's Refusal To Testify

The trial reconvened two days later with Tela again not present. The court had previously issued a bench warrant for Tela but Sale's counsel had asked that the warrant be stayed to see if Tela would appear voluntarily. Sale's counsel advised the court that she had contacted Tela by telephone and that he gave conflicting answers on whether he would appear in court, the most recent being that he would not appear. Sale's counsel asked for a continuance so that the bench warrant could be served on Tela to secure his presence.

The circuit court asked for an offer of proof regarding what Tela was going to say.

Sale's counsel responded that she had two different offers of proof:

> I need to make two offers of proof. And the first offer of proof would have been what [Tela] told us in his first interview with us on August 1st. And at that time he indicated that he gave the car to Mr. Sale. That he did not tell Mr. Sale that the car was stolen. He had bought the car for $20 [6] from an unknown person who was driving by.
>
> He intended to give the car to Mr. Sale because he knew Mr. Sale wanted to fix his Toyota Camry which belonged to his aunty who is Mr. Sale's wife. That Mr. Sale himself did not steal the car. And that he had, meaning Shawn Tela, had purchased the car from somebody else.
>
> . . . .
>
> Now, I think I'm bound to give you the other offer of proof which is what he told me later.
>
> . . . .
>
> And what he told me later, which would have been yesterday—no, Tuesday night, was a change in his story which basically was, he did purchase the car from somebody else. He, himself, Shawn Tela, was aware that the car was stolen. That he then gave it to Mr. Sale and that he said he told Mr. Sale the car was stolen.[7]

The State offered its assistance in serving the bench warrant on Tela if the court granted a continuance. The circuit court continued the trial for one day.

The following day, Tela appeared in court along with his counsel. Tela's counsel advised the court that Tela intended to assert his Fifth Amendment privilege against self-incrimination but was willing to answer limited questions about "who he is and that he does know the defendant." Sale's counsel requested that Tela be required to assert his Fifth Amendment privilege in front of the jury. If the court denied that request, Sale's counsel asked that the defense be allowed to call Tela to put his name and the fact that he

---

**6.** As previously noted, Shawn Tela (Tela) told the circuit court that he bought the car for $200.

**7.** The record indicates that the first offer of proof regarding Tela's potential testimony was based

on an interview at which Sale's counsel and Komagome were present. The second offer of proof was based on statements Tela made to Sale's counsel during a telephone call.

knows Sale in front of the jury. Sale's counsel stated that she "would stop at that point" and not ask any further questions that may elicit Tela's assertion of the privilege. Sale's counsel explained, "[W]e want [Tela] to be here so the jury can see that he is, in fact, Shawn Tela, that he's not someone Mr. Sale made up. This is a real person who knows Mr. Sale." The State objected to Sale's requests.

The circuit court personally addressed Tela and asked if Tela intended to answer questions about the 1990 Camry. Tela advised the court that he would assert his Fifth Amendment privilege. The DPA then made a proffer to the court of statements Tela had made to the State's investigators:

> [Tela] told [the investigators] that he knew the car was stolen. He told [Sale] that the car was stolen and not to drive it. That he had acquired it for his uncle to be used for parts.

The circuit court ruled that Sale could not call Tela as a witness at all. The parties agreed to read a stipulation to the jury that "Oliver Shawn Tela is a person who resides in the City and County of Honolulu." Sale's counsel then requested that Komagome be allowed to testify about statements Tela made during a defense interview. The court sustained the State's objection that Komagome's prospective testimony would constitute inadmissible hearsay. When the trial resumed, Sale's counsel read the stipulation regarding Tela to the jury and the defense rested.

## DISCUSSION

### I.

■ Sale contends that the circuit court abused its discretion by prohibiting the defense from calling Tela: 1) in order to have him invoke his Fifth Amendment privilege against self-incrimination in front of the jury;

and 2) to answer limited questions about who he was and how he knew Sale. We disagree.

■ The Hawai'i Supreme Court has concluded that

> different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawaii,* 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993). A trial court's determination of whether evidence is relevant under Hawaii Rules of Evidence (HRE) Rule 401 (1993)[8] is reviewed under the right/wrong standard. *State v. St. Clair,* 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). An evidentiary decision based on HRE Rule 403 (1993)[9] is reviewed for abuse of discretion. *Id.* "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Lee,* 90 Hawai'i 130, 134, 976 P.2d 444, 448 (1999).

### A.

■ The Fifth Amendment privilege against self-incrimination extends not only to criminal defendants but to trial witnesses generally. *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *United States v. Gaitan–Acevedo,* 148 F.3d 577, 588 (6th Cir.1998); HRE Rule 509

---

8. Hawaii Rules of Evidence (HRE) Rule 401 (1993) provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.

9. HRE Rule 403 (1993) provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(1993).[10] Sale does not dispute that Tela had a valid privilege under the Fifth Amendment to refuse to answer any question relating to the stolen 1990 Camry. Nevertheless, Sale claims that he was entitled to call Tela and have Tela assert the Fifth Amendment privilege in response to questions about the 1990 Camry in front of the jury.

We reject Sale's claim. HRE Rule 513 (1993) provides in relevant part:

> (a) Comment or inference not permitted. The claim of a privilege, whether in the present proceeding or upon a prior occasion, *is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.*
>
> (b) Claiming privilege without knowledge of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

(Emphasis added.) Tela's assertion of his Fifth Amendment privilege was "not a proper subject of comment by [the] judge or counsel" and "no inference may be drawn therefrom." HRE Rule 513(a). In other words, under HRE Rule 513(a), Tela's invocation of his privilege in front of the jury would not have been entitled to any probative weight and could not properly have been considered by the jury. The circuit court did not err in prohibiting Sale from calling Tela for the purpose of eliciting a response that the jury could not properly consider. *See State v. Heft,* 185 Wis.2d 288, 517 N.W.2d 494, 500–01 (1994) (concluding under a Wisconsin statute similar to HRE Rule 513 that the defense was not entitled to call a witness it knew would invoke the Fifth Amendment privilege); *see also, People v. Holloway,* 33 Cal.4th 96, 14 Cal.Rptr.3d 212, 91 P.3d 164, 186–88 (2004).

In addition, allowing Sale to compel Tela to invoke his Fifth Amendment privilege in front of the jury would have created a substantial danger of unfair prejudice to the State. There was a significant risk that the jury would interpret Sale's calling Tela and forcing Tela to invoke the Fifth Amendment privilege as supporting Sale's defense.[11] For example, the jury may have inferred that Tela was responsible for stealing the 1990 Camry and thus concealed the car's stolen status from Sale. The risk of unfair prejudice to the State was particularly significant since Tela's prior statements about the 1990 Camry included statements that he told Sale the car *was* stolen. The State, however, could not have cross-examined Tela about his statements inculpating Sale, and therefore it would have been powerless to dispel any inferences favorable to the defense that the jury drew from Tela's invocation of the Fifth Amendment privilege. *See United States v. Reyes,* 362 F.3d 536, 542 (8th Cir.2004) (noting the substantial danger of unfair prejudice when a witness is called to invoke the Fifth Amendment privilege because the opposing party cannot cross-examine the witness and thus cannot test the meaning the jurors may attribute to the invocation).

Under circumstances similar to Sale's case, courts in other jurisdictions have routinely held that the trial court properly prohibited a criminal defendant from calling a witness to have the witness invoke his or her Fifth Amendment privilege in front of the jury. *E.g., Bowles v. United States,* 439 F.2d 536, 541–42 (D.C.Cir.1970) (en banc); *Reyes,* 362 F.3d at 542; *Heft,* 517 N.W.2d at 500–01; *Holloway,* 14 Cal.Rptr.3d 212, 91 P.3d at 186–88; *United States v. Deutsch,* 987 F.2d 878, 884 (2d Cir.1993).

Sale notes that HRE Rule 513(b) provides that "to the extent practicable," the court shall determine claims of privilege outside the jury's presence. Sale argues that this language gave the circuit court discretion to allow Sale to call Tela for the purpose of compelling Tela to invoke his Fifth Amendment privilege against self-incrimination in

---

**10.** HRE Rule 509 (1993) provides:

To the extent that such privilege exists under the Constitution of the United States or the State of Hawaii, a person has a privilege to refuse to disclose any matter that may tend to incriminate the person.

**11.** We presume that Sale's purpose in seeking to have Tela invoke his Fifth Amendment privilege in the jury's presence was to have the jury draw an inference favorable to the defense. *See State v. Culkin,* 97 Hawai'i 206, 222, 35 P.3d 233, 249 (2001).

front of the jury. The circuit court, however, knew in advance that Tela would invoke the privilege if called as a witness. Both Tela and Tela's counsel had advised the circuit court that Tela would invoke his Fifth Amendment privilege if called to testify about the 1990 Camry. Under these circumstances, it was "certainly 'practicable' for the circuit court to avoid [Sale's] prejudicial questioning" by prohibiting Sale from eliciting Tela's invocation of the privilege in front of the jury. *State v. Culkin*, 97 Hawai'i 206, 222, 35 P.3d 233, 249 (2001). The circuit court cannot be faulted for following the approach favored by HRE Rule 513(b).[12]

**B.**

■ Sale argues that the circuit court abused its discretion in precluding him from calling Tela for the limited purpose of establishing that Tela was a real person who knew Sale. Although a stipulation was read to the jury establishing that Tela was a real person who resided in Honolulu, Sale argues that the stipulation was insufficient because it failed to show the relationship between Tela and Sale.[13]

■ We conclude that under HRE Rule 403, the circuit court did not abuse its discretion in precluding Sale from calling Tela to establish their relationship. The danger of jury confusion resulting from Sale's calling Tela for this limited purpose substantially outweighed the probative value of such evidence. Under HRE Rule 403, the determination of probative value requires an assessment of both the relevancy and need for the evidence. Addison M. Bowman, *Hawaii Rules of Evidence Manual* (hereinafter Bowman) § 403–2B(2) at 121 (2d ed.1996); *see State v. Clark*, 83 Hawai'i 289, 303, 926 P.2d 194, 208 (1996); *Lau v. Allied Wholesale, Inc.*, 82 Hawai'i 428, 436, 922 P.2d 1041, 1049 (App.1996). The need assessment involves an evaluation of three variables: 1) the relative importance of the fact to be inferred; 2) the degree to which the fact to be inferred is actually disputed; and 3) the availability and quality of other evidence tending to prove the same point. *Walsh v. Chan*, 80 Hawai'i 212, 217, 908 P.2d 1198, 1203 (1995) (citing Bowman § 403–2B(2) at 121).

Although relevant to Sale's defense, the relationship between Sale and Tela was not a key issue in the case. Sale's defense to the UCPV charge did not turn on his relationship with Tela but on whether Sale believed Tela was the owner of the 1990 Camry. Sale's close relationship with Tela was not disputed. Sale testified that Tela was Sale's nephew and that Sale had known Tela from the time Tela was a baby. The State did not contest Sale's testimony about his relationship with Tela on cross-examination or during closing argument. In addition, Sale's testimony about his relationship with Tela could presumably have been corroborated by other means such as the testimony of Sale's wife, another relative, or a family friend. Accordingly, the probative value of Tela's testimony regarding his relationship with Sale was relatively insignificant.

On the other hand, there was a significant risk of jury confusion if Tela was called and questioned only about his relationship with Sale and not about Tela's involvement with the 1990 Camry—the most pertinent issue in

---

12. We are not persuaded by Sale's citation to *Gray v. State*, 368 Md. 529, 796 A.2d 697 (2002). In *Gray*, the Maryland Supreme Court concluded that where the defendant produces evidence that a witness committed the crime for which the defendant is being tried, the trial court may compel the witness to invoke his or her Fifth Amendment privilege against self-incrimination in front of the jury. *Id.* at 717–18. Maryland, however, does not have a rule of evidence equivalent to HRE Rule 513. The *Gray* decision was based on the court's determination that calling a witness to elicit the witness's invocation of his or her Fifth Amendment privilege may be given probative weight by the trier of fact, *id.* at 715, which is contrary to the view expressed in HRE

513(a). In addition, *Gray* involved a "single culprit crime" where the defendant's defense was that the witness who would be called to invoke the privilege was the true perpetrator. *Id.* at 717–18, 726. In contrast, establishing that Tela stole or unlawfully possessed the 1990 Camry would not necessarily mean that Sale was innocent. Thus, the circumstances that drove the court's analysis in *Gray* are not present in Sale's case.

13. There is nothing in the record indicating that Sale requested an additional stipulation from the State of Hawai'i (the State) covering Sale's relationship with Tela.

the case. Having Tela take the stand under these conditions would have invited rampant speculation by the jury and diverted the jury's attention from the actual evidence presented in the case. *See United States v. Purdy*, 144 F.3d 241, 246 (2d Cir.1998) (upholding the trial court's exclusion of testimony because the testimony "would merely have distracted the jury from the central issues of the case and from its fact-finding functions"). In view of the significant danger of jury confusion and the limited probative value of Tela's proposed testimony, the circuit court did not abuse its discretion in precluding Tela from testifying.

Moreover, any error in precluding Tela from testifying about his relationship with Sale was harmless beyond a reasonable doubt. *See State v. Holbron*, 80 Hawai'i 27, 32 n. 12, 904 P.2d 912, 917 n. 12 (1995) (concluding that the Hawai'i Rules of Penal Procedure Rule 52(a) imposes a harmless beyond a reasonable doubt standard of review). As noted, Sale's relationship with Tela was not disputed. Rather, the pivotal issue in the case was whether Sale believed that Tela was the owner of the 1990 Camry. The State produced compelling evidence that Sale knew that Tela was not the owner of 1990 Camry and that the car was in fact stolen. This included: 1) Sale's admission during cross-examination that he knew Tela was not the registered owner of the 1990 Camry; 2) the readily visible damage to the car's ignition housing, door locks, and VIN number; 3) Sale's providing a false name, social security number, and date of birth to Officer Lucas–Medeiros; and 4) Sale's inability to provide a plausible, innocent explanation for why he planned to dismantle the functioning 1990 Camry to obtain parts for an older, broken Camry. There was no reasonable possibility that any error in precluding Tela from testifying about his relationship with Sale might have contributed to Sale's conviction. *See State v. White*, 92 Hawai'i 192, 198, 205, 990 P.2d 90, 96, 103 (1999) (stating the test for the harmless beyond a reasonable doubt standard).

## II.

■ Sale argues that the circuit court erred in excluding Komagome from testifying about statements Tela made during a pretrial interview. Based on the proffer of Sale's counsel, Komagome would, in substance, have testified that during the interview, Tela stated that: 1) Tela bought the 1990 Camry from a stranger for $20; 2) Tela gave the 1990 Camry to Sale; and 3) Tela did not tell Sale the 1990 Camry was stolen. Sale argues that Komagome's testimony was admissible under HRE Rule 804(b)(3) (1993) as a statement against interest or, alternatively, for the non-hearsay purpose of explaining Sale's conduct and showing his state of mind. Sale's arguments are without merit.

■ We apply the right/wrong standard of review to a trial court's decision to admit or exclude evidence based on its application of the hearsay rule. *State v. Ortiz*, 91 Hawai'i 181, 189–90, 981 P.2d 1127, 1135–36 (1999). HRE Rule 804(b)(3) sets forth an exception to the hearsay rule for a statement against interest:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement* [.]

(Emphasis added.) The Hawai'i Supreme Court has held that an out-of-court declaration may be admitted as a statement against interest "if the fact asserted is so palpably against the declarant's interest that he must

have realized it to be so when he made the statement." *State v. Bates,* 70 Haw. 343, 348, 771 P.2d 509, 512 (1989) (quotation marks and brackets omitted).

In this case, Tela's interview statements fail to satisfy the basic requirement of HRE 804(b)(3) that the statements be against Tela's interest. Tela's statements to Komagome were exculpatory. Tela did not admit to any criminal wrongdoing or to conduct that would expose himself to civil liability. To the contrary, Tela purported to have paid for the 1990 Camry and given it to Sale. Tela's statements were not "so palpably against" Tela's interest that he "must have realized it to be so" when he made the statements. *Bates,* 70 Haw. at 348, 771 P.2d at 512.

Furthermore, even accepting, *arguendo,* Sale's claim that Tela's statements to Komagome tended to subject Tela to criminal liability, the statements were not admissible because they were inherently untrustworthy. Indeed, Tela subsequently contradicted his statements to Komagome on two separate occasions, telling both Sale's counsel and the State's investigators that he *had* told Sale the car was stolen. Therefore, Tela's statements to Komagome could not be offered to exculpate Sale because they failed to satisfy the requirement of HRE Rule 803(b)(3) that corroborating circumstances clearly indicate the statements were trustworthy.

We also reject Sale's claim that Tela's statements to Komagome were admissible for a non-hearsay purpose. Statements made by Tela regarding the 1990 Camry would only be relevant for the non-hearsay purpose of explaining Sale's conduct or showing his state of mind if they were made to Sale prior to or during the alleged crime. Tela's statements to Komagome, however, were made after Sale had already been charged.

Stated another way, Tela's statements to Komagome could not serve to explain Sale's conduct or show his state of mind unless the jury *accepted the statements for their truth,* in other words, that in fact Tela did buy the car for $20; that Tela did give the car to Sale; and that Tela did not tell Sale the car was stolen. This demonstrates that Tela's

statements were being offered for their truth and thus were inadmissible as hearsay under HRE Rule 801 (Supp.2005) and HRE Rule 802 (1993).

### III.

■ Sale argues that by requiring him to testify before resolving whether Tela would testify, the circuit court violated his rights against self-incrimination and to due process under the United States and Hawai'i Constitutions. In support of his argument, Sale cites *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), and *State v. Kido,* 102 Hawai'i 369, 76 P.3d 612 (App. 2003).

In *Brooks,* the United States Supreme Court struck down a Tennessee statute which required a criminal defendant to testify first for the defense or not at all. 406 U.S. at 606, 610–12. The Court held that the statute violated the defendant's right against self-incrimination by imposing impermissible restrictions on his decision on whether to testify. *Id.* at 609–10, 92 S.Ct. 1891. The Court explained:

> [A] defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice in the unfettered exercise of his own will. [The Tennessee statute] exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. The rule, in other words, cuts down on the privilege (to remain silent) by making its assertion costly.

*Id.* at 610–611, 92 S.Ct. 1891 (internal quotation marks and footnotes omitted).

The Court also held that the statute violated the defendant's due process rights under the Fourteenth Amendment by depriving the defendant of "the guiding hand of counsel" in deciding whether to testify and the timing of

the defendant's testimony. *Id.* at 612–13, 92 S.Ct. 1891. The Court ended its due process discussion by stating:

> While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand.

*Id.* at 613, 92 S.Ct. 1891.

Notwithstanding the broad language in *Brooks,* courts have declined to find constitutional error in circumstances factually distinguishable from *Brooks. E.g., Harris v. Barkley,* 202 F.3d 169, 173 (2d Cir.2000) ("*Brooks* does not constitute a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony."); *see Kido,* 102 Hawaiʻi at 376, 76 P.3d at 619 (citing cases from other jurisdictions in which courts have distinguished *Brooks* and declined to find *Brooks* error). In particular, courts have concluded that there was no *Brooks* error in cases where the defendant's decision to testify had already been formed before the trial court's action. *United States v. Leon,* 679 F.2d 534, 538 (5th Cir.1982); *State v. Amos,* 262 N.W.2d 435, 437 (Minn. 1978); *State v. Turner,* 252 Conn. 714, 751 A.2d 372, 383–84 (2000).

In *Kido,* this court applied *Brooks* to a situation where the defendant Kido was required to testify first despite his desire to begin his case with another witness; the record contained no indication that Kido had already decided to testify when the court forced his decision; and the inconvenience of waiting for the other witness, who was in the courthouse, was "trifling indeed." *Kido,* 102 Hawaiʻi at 372, 376–77, 76 P.3d at 615, 619–20. Because "the choice foisted upon Kido was effectively the same choice the Tennessee statute forced upon Brooks," we did not examine the precise interplay, if any, between the ordinary power of a trial judge to set the order of proof and the restrictions imposed by *Brooks. Id.* at 376, 76 P.3d at 619. Rather, we emphasized that "based on the specific facts of [Kido's] case," the trial court's requiring Kido to testify before his other witness violated Kido's right against self-incrimination and his right to due process. *Id.* at 378, 76 P.3d at 621. While holding that the *Brooks* error was subject to harmless error analysis, we concluded that under the particular facts of *Kido,* the error was not harmless. *Id.* at 378–79, 76 P.3d at 621–22.

In Sale's case, we need not address whether the circuit court's actions amounted to *Brooks* error because we conclude that any error was harmless beyond a reasonable doubt. Unlike in *Kido,* Sale had already stated his decision to testify on the record before the circuit court ruled that he could not wait until Tela's availability as a witness was resolved. Thus, the circuit court's ruling that Sale take the stand without delay did not influence Sale's decision on whether to testify. *See Leon,* 679 F.2d at 538; *Amos,* 262 N.W.2d at 437; *Turner,* 751 A.2d at 384. Indeed, Sale did not claim in the court below and does not argue on appeal that his decision to testify depended on whether Tela took the stand.[14]

But the most important distinction between this case and *Kido* is that Sale turned out to be the only witness for the defense. As we have previously concluded, the circuit court properly precluded Tela and Komagome from being called as witnesses. Therefore, even if the circuit court had granted Sale's request to delay Sale's testimony until Tela's availability was determined, the result would have been the same. Sale would still have been the first and only witness for the defense. Under these circumstances, there is no reasonable possibility that any error in the circuit court's requiring Sale to testify before Tela's availability was determined

---

14. *State v. Kido,* 102 Hawaiʻi 369, 76 P.3d 612 (App.2003), is further distinguishable in that the delay to obtain the witness in *Kido* would have been minimal since the witness was in the courthouse and could easily have been summoned. *Id.* at 377, 76 P.3d at 620. In contrast, Tela failed to appear in violation of the circuit court's specific order that he return at 1:30 p.m. and his whereabouts were unknown. To accommodate Sale, the circuit court would have had to suspend the entire afternoon session of a short trial with no guarantee that Tela's presence could be secured.

might have contributed to Sale's conviction.[15] *See White,* 92 Hawai'i at 198, 205, 990 P.2d at 96, 103.

## IV.

▮▮▮▮ Sale claims that the circuit court erred in instructing the jury on the material elements of the UCPV offense. We apply the following standard of review:

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.

> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

> Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (internal quotation marks, citations, and brackets omitted; block quote format changed).

HRS § 708–836, which sets forth the offense of UCPV, provides in relevant part that "[a] person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly *exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent* ...." (Emphasis added.) Sale proposed a jury instruction on the UCPV offense which described the material elements of the offense as follows:

There are two material elements of the offense of Unauthorized Control of Propelled Vehicle, each of which the prosecution must prove beyond a reasonable doubt.

The two elements are:

1. That, on or about October 19, 2002 in the City and County of Honolulu, the Defendant intentionally or knowingly *exerted unauthorized control over another's propelled vehicle;* and

2. That the Defendant did so by intentionally or knowingly *operating the vehicle without the owner's consent.*

(Emphasis added.) The State's proposed UCPV instruction similarly described the material elements of the offense as follows:

These three elements are:

1. That, on or about the (sic) October 19, 2002, in the City and County of Honolulu, State of Hawaii, the Defendant *exerted unauthorized control over another's propelled vehicle;* and

2. That the Defendant did so by *operating the vehicle without the owner's consent;* and

3. That the Defendant did so intentionally or knowingly.[16]

(Emphasis added.)

Over the objection of both Sale and the State, the circuit court gave its own instruction on the UCPV offense as follows:

The defendant Fua Sale is charged with the offense of Unauthorized Control of a Propelled Vehicle. A person commits the offense of Unauthorized Control of a Propelled Vehicle if he intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent.

There are three material elements to the offense of Unauthorized Control of a Pro-

---

**15.** Our conclusion that any error under *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), was harmless beyond a reasonable doubt would not change even if the circuit court had permitted Sale to call Tela for the limited purpose of testifying about his relationship with Sale. Assuming that Tela's limited testimony had been permitted, there is no reasonable possibility that having Sale testify before Tela,

rather than after, might have materially affected the manner in which Sale testified or contributed to Sale's conviction.

**16.** The material elements portion of the State's proposed instruction tracked the language of the Hawai'i Standard Jury Instructions—Criminal 10.24 (2002).

pelled Vehicle, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1) That the defendant *operated another['s][17] propelled vehicle,* the requisite conduct; and

2) That the defendant did so *without the owner's consent,* a requisite attendant circumstance; and

3) That the defendant acted intentionally or knowingly with respect to each of the foregoing elements.

(Emphasis added.) In explaining its instruction, the circuit court stated that as used in the UCPV statute, the phrase "exerts unauthorized control over another's propelled vehicle" was substantively equivalent to the phrase "operating the vehicle without the owner's consent." It would therefore be redundant, the circuit court believed, to instruct the jury that it must find both that the defendant "exerted unauthorized control over another's propelled vehicle" and that he did so by "operating the vehicle without the owner's consent." Accordingly, the circuit court's instruction only required the jury to find that the defendant intentionally or knowingly operated another's propelled vehicle without the owner's consent.

Sale argues that the circuit court's instruction was "prejudicially insufficient and erroneous" because it omitted the material element that the defendant "exerted unauthorized control" over another's vehicle. We disagree and reject Sale's argument.

Sale asserts that the question of whether a defendant exerted unauthorized control over another's propelled vehicle is separate and distinct from the question of whether the defendant operated the vehicle without the owner's consent. He does not, however, explain why. In particular, Sale does not explain how, under the UCPV statute, a person could have operated a vehicle without the owner's consent but still not have "exerted unauthorized control" over the vehicle. Nor does Sale explain how the alleged erroneous omission of the "exerted unauthorized control" language from the court's instruction could possibly have affected the outcome of his case. We agree with the circuit court that under the UCPV statute, proving that a person operated another's propelled vehicle without the owner's consent also necessarily establishes that the person "exerted unauthorized control" over the vehicle.

## CONCLUSION

The Judgment filed on October 22, 2003, in the Circuit Court of the First Circuit is affirmed.

---

**17.** The trial transcript uses the word "another" rather than the word "another's" that appears in both the circuit court's written instructions and the set of written instructions that was provided to the jury during its deliberations. We note that Sale did not object in the court below that the UCPV instruction was misread and does not raise any misreading of the instruction as an issue on appeal. If, indeed, the circuit court misread the instruction, any error was cured or rendered harmless by the correct written instruction being provided to the jury. *See State v. Staley,* 91 Hawai'i 275, 285, 982 P.2d 904, 914 (1999) (concluding that the defendant's substantial rights were not affected by the trial court's minor omission in reading a jury instruction in a case where a set of written instructions was provided to the jury); *People v. Box,* 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130, 169 (2000) (holding that misreading jury instructions is at most harmless error when the written instructions received by the jury are correct).