The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Alfred RAGLIN, Defendant–Appellant.

No. 98CA1385.

Colorado Court of Appeals, Div. II.

Sept. 28, 2000.

Certiorari Denied March 26, 2001.*

* Justice COATS does not participate.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Dana Nichols, Deputy State Public Defenders, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Alfred Raglin, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder. We affirm.

On June 27, 1997, two people observed defendant and the victim fighting in a car at a neighborhood park. After hearing the victim scream, they called the police.

Upon their arrival, the police found defendant in the car covered with blood. The victim was on the floor of the vehicle with numerous stab wounds, which ultimately proved fatal.

The defense did not dispute that defendant had caused the victim's death. Rather, defendant's principal contention was that he did not kill the victim after deliberation, but rather "blacked out" during the stabbing.

## I. Motion for Mistrial

### A. Juror's Prior Criminal Conviction

Defendant asserts the trial court abused its discretion in denying his request for mistrial. Specifically, he argues that his rights to due process, jury trial, and a fair and impartial jury were violated because one of the jurors did not disclose that he had a previous assault conviction. We perceive no reversible error.

Mistrial is a drastic remedy and is warranted only where the prejudice to the defendant is so substantial that its effect on the jury cannot be remedied by any other means. *People v. Burke*, 937 P.2d 886 (Colo. App.1996). The determination whether to declare a mistrial is committed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion and prejudice to the defendant. *People v. Schwartz*, 678 P.2d 1000 (Colo.1984).

Under the doctrine of invited error, a defendant may not later complain where he or she has been "the instrument for injecting error in the case; he is expected to abide by the consequences of his acts." *People v. Collins*, 730 P.2d 293, 304–05 (Colo.1986).

During the jury deliberations here, various jurors sent out five notes to the court regarding their concern that another juror was biased. The first note informed the court that the jury was deadlocked and that the juror in question refused to convict defendant of first degree murder, regardless of what the law dictated. The other four notes informed the court that the juror in question had described his prior experience with various issues related to the trial, in particular, assault, drug addiction, alcoholism and "yo-yo relationships," and therefore could not convict defendant of first degree murder. In these notes the jurors expressed the concern that the biases and personal experiences of the juror in question prevented him from applying the law to the facts without interjecting his emotions into his decision. The jurors also stated that they believed the juror in question had determined his point of view prior to the presentation of all the evidence.

In response to these notes, the trial court examined the juror's pre-selection questionnaire and found that when he was asked whether he had ever been charged with any crime other than a minor traffic offense, the juror had answered "No." The court then requested a conference with the juror and asked him again whether he had ever been

charged with a crime more serious than a minor traffic offense. Again, the juror answered "No," but did admit that he had been charged with a traffic altercation offense. During this questioning, the court told the juror not to divulge to it any information regarding his feelings about the verdict or the content of the jury deliberations.

At the conclusion of the court's questioning, defendant requested a mistrial, asserting that because of the questioning of the allegedly biased juror, a "bad message" was being sent to the rest of the jury. The trial court denied the request.

Upon further investigation, the court discovered that the traffic altercation was actually an assault charge to which the juror had pled guilty.

■ Defendant again requested a mistrial based on the juror's disclosure of false information. The trial court denied the renewed request, concluding that the juror's non-disclosure was not significant. Nevertheless, the court offered to replace the juror with one of the two alternate jurors who remained "on call". Defendant declined, stating that replacing the juror would not be an adequate remedy at this advanced stage of the deliberation process. However, replacing a juror after deliberations have begun is an adequate remedy, as long as the trial court takes extraordinary precautions to ensure there is no prejudice to the defendant's right to a fair trial. *See People v. Burnette*, 775 P.2d 583 (Colo.1989).

Based on our review of the record, we conclude that because the defendant refused the trial court's offer to replace the juror, he invited any error that may have occurred. *See People v. Collins, supra.* Therefore, the trial court did not abuse its discretion in denying defendant's request for mistrial.

### B. Jury's Likelihood of Progress

■ Defendant next asserts the trial court erred in giving the jury a coercive instruction after learning that it had reached an impasse. Specifically, he argues that reversal is required because the trial court failed to ask the jury whether further deliberations would be helpful. We disagree.

■ Upon receiving information that a jury cannot agree on a verdict, a trial court may not give an instruction with a potentially coercive effect, but may, in its discretion, give a "modified-*Allen*" instruction. *See Allen v. People*, 660 P.2d 896 (Colo.1983).

Such instruction must inform the individual jurors that they should attempt to reach a unanimous verdict, but that they should not be influenced to change their opinion by the opinions of the other jurors. In addition, the instruction must inform the jurors that if it appears to the trial court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared. The exact wording of such an instruction is within the discretion of the trial court. *People v. Schwartz, supra.*

■ A prerequisite to giving a "modified-*Allen*" instruction is that the trial court inquire of the jurors as to whether further deliberations would be productive. However, even if the trial court does not make such an inquiry, the error is harmless where the instruction given is not coercive and does not impliedly or expressly authorize the jury to render a compromise verdict. *People v. Ragland*, 747 P.2d 4 (Colo.App.1987).

Here, the trial court made the following statement to the jury:

> I would ask you at this time to please go back to the jury room and resume your deliberations. If after you have tried that you believe that you're unable to reach a unanimous verdict, you can let us know when you have decided that, and we'll go from there.

Defense counsel objected to the instruction, and the court overruled the objection. Shortly thereafter, the jury returned with a verdict finding defendant guilty of first degree murder. Each juror, including the allegedly biased juror, affirmed that the verdict represented a free and voluntary decision.

Defendant renewed his request for a mistrial, and the trial court again denied the request.

Under these unique circumstances, we conclude that it was unnecessary for the trial

court to ask the jurors whether they were deadlocked before giving them the "modified-*Allen*" instruction. The trial court was extremely cautious and did not ask the allegedly biased juror about the deliberations. In addition, it was already clear from the notes of the jurors that they felt they had reached an impasse prior to the court's conference with the juror.

We further conclude that the court's instruction was not coercive, but merely encouraged the jury to reach a unanimous verdict. The instruction also made clear that, in the event the jurors could not reach a unanimous verdict, they should inform the court and further action would be taken at that time. Thus, no reversible error occurred.

## II. Similar Transaction Evidence

■ Defendant next contends the trial court employed an incorrect legal standard in determining the admissibility of similar transaction evidence. We disagree.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity with that character. However, such evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

In cases involving domestic violence, where the defendant and the victim have engaged in an intimate relationship, the admissibility of "other acts" evidence is governed by § 18–6–801.5, C.R.S.2000. That statute provides that evidence of other acts of domestic violence between the defendant and the victim are admissible if offered to show common plan, scheme, design, identity, *modus operandi*, motive, guilty knowledge, or some other purpose. In ruling on the admissibility of such evidence, the trial court must determine whether its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Section 18–6–801.5, C.R.S. 2000.

■ A trial court has substantial discretion in determining the admissibility of prior acts evidence, and such determination will

not be disturbed on appeal absent an abuse of such discretion. *People v. Groves,* 854 P.2d 1310 (Colo.App.1992).

Here, the prosecutor introduced evidence that: (1) in 1995, defendant had threatened the victim with a gun; (2) defendant had told the victim, "If I can't have you, no one will. I'll kill you first"; (3) in 1996, defendant had hit the victim; (4) in May 1997, defendant had entered the victim's car and home without permission; and (5) in June 1997, the victim had suffered abrasions on her neck and a tear in her clothing as a result of a scuffle with defendant.

Defendant argues that the admission of this evidence was improper for two reasons. First, he asserts the court failed to apply the third step of the analysis set forth in *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

Relying on the trial court's statement, "I really don't think that [the third] prong of the *Spoto* analysis has any substantial application here," defendant contends that the trial court failed to apply the third prong. We disagree.

■ Under *Spoto,* evidence of prior acts is admissible if it: (1) relates to a material fact; (2) has a tendency to make the existence of the material fact more or less probable; (3) is relevant independent of the inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) has probative value that is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto, supra.*

When viewed in context, it is apparent that the trial court in fact applied the third prong of the *Spoto* test. It noted that that step deals with the intermediate inference of bad character. It then concluded that the bad acts evidence here related generally to the defendant's attitude toward the victim rather than the defendant's character. Additionally, the trial court relied on *People v. Hulsing,* 825 P.2d 1027 (Colo.App.1991), in which a division of this court held that acts of domestic violence between marital partners was admissible to show motive and malice. *Hulsing* applied CRE 404(b) in its analysis.

Therefore, it is clear that the trial court adequately considered the third step of the *Spoto* test, and we reject defendant's argument that it did not.

Second, defendant argues that *Hulsing* does not apply here because its holding is limited to spouses. Further, while acknowledging that § 18–6–801.5 is not so limited, defendant argues that *Hulsing* is also not applicable because it was decided three years before this statute was enacted.

■ However, defendant's argument goes too far. Section 18–6–801.5(2) provides, in pertinent part, that the statutory "other acts" test in cases of domestic violence applies when "the defendant and the victim named in the information have engaged in an intimate relationship as of the time alleged in the information...." There is no dispute here that defendant and the victim were engaged in such an intimate relationship. Thus, by the plain language of this statute, the other acts evidence at issue here was admissible irrespective of whether defendant and the victim were married.

In any event, there is no logical reason why *Hulsing* should not be extended to apply beyond the circumstances of marital partners to the circumstances described in § 18–6–801.5(2), i.e., those engaged in an intimate relationship, whether or not they are married.

Accordingly, we conclude that the trial court did not err in applying both CRE 404(b) and § 18–6–801.5 to the circumstances presented here.

Our review of the record leads us to conclude that the trial court properly evaluated the evidence pursuant to § 18–6–801.5 and, therefore, did not abuse its discretion in admitting the "other acts" evidence.

### III.   Cross–Examination of Expert
#### A.

■ Defendant next asserts the trial court erred in allowing the prosecutor to cross-examine his expert regarding the thoroughness of her report because the report was in compliance with a court order and, when it was submitted, the prosecutor did not object to the form or substance of it. We disagree.

■ It is fundamental that an expert may be cross-examined concerning the basis for his or her opinion. *People v. Alward*, 654 P.2d 327 (Colo.App.1982).

Here, shortly before trial, the prosecutor requested a report from defendant's expert regarding her opinions to be stated at trial. Defendant refused to supply a report and requested a protective order on the ground that the information provided to the expert by defendant was privileged. The court denied defendant's request and ordered him to submit a report to the prosecutor.

The report finally submitted by defendant's expert stated her opinion that defendant was not able to deliberate before killing the victim because: (1) he was emotionally dependent on the victim; (2) his repressed rage affected his ability to deliberate; and (3) if he had acted with deliberation he would not have killed the victim in a public park by means of 43 stab wounds. The opinion consisted of three paragraphs, and the expert admitted that the report was a "bare bones" assessment of defendant's state of mind at the time of the murder.

On cross-examination, the prosecutor questioned the expert regarding the brevity and thoroughness of the report. Defendant unsuccessfully objected to the prosecutor's questions on relevancy grounds.

The expert's opinions concerned the main issue in the case—whether defendant deliberated before the murder. The prosecutor's questions related directly to how the expert had arrived at her conclusion that defendant did not deliberate prior to the murder. Also, nothing in the trial court's order required the defendant to submit a "bare bones" report from the expert, nor did the order state that such report would preclude cross-examination of the expert. Thus, we conclude that the prosecutor's questions regarding the thoroughness of the report were a proper means of casting doubt on the expert's credibility. Accordingly, the trial court did not abuse its discretion in allowing the prosecutor's questions.

### B.

Defendant also contends that because he did not allege "heat of passion" as a defense to the victim's murder, the trial court erred in allowing the prosecutor to elicit testimony from his expert regarding that defense. We are not persuaded.

The scope of cross-examination of an expert is within the trial court's discretion, and its ruling relative thereto will not be disturbed on appeal absent an abuse of such discretion. *People v. Raffaelli,* 647 P.2d 230 (Colo.1982).

During cross-examination, the prosecutor asked the expert: "Would you agree with me that in just using sort of the reasonable man standard, reasonable woman standard, that act on [the victim's] part of wanting to leave wouldn't create an irresistible passion to commit this act?" Defendant's attorney objected to this question, asserting that it was outside the scope of direct examination. The trial court overruled the objection, concluding that defendant had opened the door because the expert had testified on direct examination that before the murder there was "an escalating argument [between the victim and defendant] which triggered a cascade of rage [in defendant]."

Although the expert did not specifically state that defendant had acted in the "heat of passion," her opinion implied that defendant acted as a result of uncontrollable rage. In addition, defendant indicated in his pretrial written disclosure that he intended to raise "heat of passion" as a defense. Indeed, his attorney, in his opening statement, declared that defendant killed the victim in a "fit of rage."

We agree with the trial court that defendant had opened the door for testimony regarding whether he acted in a "heat of passion" when he killed the victim. Thus, the trial court did not abuse its discretion in allowing the prosecutor's questions of defendant's expert.

### IV. "Custodial Interrogation" Under *Miranda*

Defendant also asserts the trial court erred in determining that the questioning by the officer at the scene did not constitute custodial interrogation for purposes of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

A police officer may lawfully stop a person if: (1) he or she has a reasonable suspicion that the person has committed or is about to commit a crime, (2) the purpose of the detention is reasonable, and (3) the character of the detention is reasonable when considered in light of the purpose. Section 16–3–103(1), C.R.S.2000; *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971); *People v. Smith,* 13 P.3d 300 (Colo.2000).

During such a stop, the officer may require the suspect to provide his or her name and address, identification, and an explanation for his or her actions. Such a stop does not constitute an arrest. Section 16–3–103(1), C.R.S.2000; *People v. Canton,* 951 P.2d 907 (Colo.1998) (a police officer may temporarily stop a person for investigatory purposes without probable cause to arrest him or her).

These investigatory stops are "seizures" within the meaning of the Fourth Amendment; however, they do not constitute "custody" for purposes of *Miranda* unless the detention is lengthy and the officers use force. *See People v. Breidenbach,* 875 P.2d 879 (Colo.1994).

While a trial court's findings of historical fact on a suppression issue are reviewed for clear error, the legal question of whether police conduct was reasonable under the Fourth Amendment is reviewed *de novo. See People v. Hopkins,* 870 P.2d 478 (Colo. 1994).

Here, one of the officers that first arrived on the scene of the homicide removed defendant from the car and handcuffed him. Subsequently, he advised defendant of his *Miranda* rights, and defendant stated that he understood them. The officer then asked defendant for his name and date of birth, and defendant provided such information. The officer left defendant for a few moments and returned later.

Upon returning, the officer again advised defendant of his *Miranda* rights. The officer also asked for defendant's name, date of

birth, and an explanation as to what happened. Defendant did not respond. The officer testified that then, out of concern for defendant's safety, he asked defendant whether the blood on his clothing belonged to him. Defendant told the officer that it was his blood from a cut on his finger.

At trial, the officer also testified as to defendant's explanation for the source of the blood. Defendant moved to suppress that statement, as well as his statements regarding his name and date of birth.

The trial court concluded that the officer's testimony was proper because the questions did not violate defendant's *Miranda* rights. The court determined that the questions the officer asked did not constitute custodial interrogation within the meaning of *Miranda* because the questions were calculated to determine defendant's identity and whether he was injured and needed medical assistance.

In their arguments, both parties assume that defendant did not waive his rights under *Miranda*, and we will do likewise.

█ Accordingly, we conclude that the trial court's factual findings are supported by the record, and we agree with its conclusion that the police officer's questions concerning defendant's name and date of birth did not constitute custodial interrogation. *See People v. Anderson*, 837 P.2d 293 (Colo.App. 1992).

█ Further, we conclude that the trial court also properly determined that the officer's questions related to the blood on defendant did not constitute interrogation under *Miranda* because they were not asked in order to elicit an incriminating response. *See Johnson v. State*, 269 Ind. 370, 380 N.E.2d 1236 (1978) (no interrogation under *Miranda* when officer asked what happened to defendant who had blood over his face and body); W. La Fave, *Criminal Procedure* § 6.7(b) (2d ed.1999) (no inference of attempting to solicit an incriminating response when an officer asks questions that anyone would naturally ask given the condition of the defendant or other unusual circumstances); *see also People v. Copenhaver*, 21 P.3d 413, (Colo.App.2000) (where officers saw blood in defendant's car and believed a second person

was injured, officers' warrantless entry into defendant's apartment to look for injured party did not require suppression of evidence obtained in plain view). Here, the trial court concluded, with record support, that the officer's questions were asked to determine whether defendant needed medical attention.

Thus, these questions did not constitute interrogation for purposes of *Miranda*, and denial of the motion to suppress was not error.

## V. Photographs

█ Finally, defendant contends the trial court abused its discretion in admitting into evidence several photographs of the victim's body because they were inflammatory and unduly prejudicial. We perceive no reversible error.

██ A trial court has broad discretion in determining the admissibility of evidence. Therefore, absent an abuse of such discretion, a trial court's evidentiary rulings will not be disturbed on appeal. *People v. Quintana*, 882 P.2d 1366 (Colo.1994).

█ Photographs of a homicide victim are admissible at trial when they depict the appearance of the victim, the location and nature of the wounds, or other facts that would be competent for a witness to describe in words. The admissibility of such photographs is not precluded merely because prosecution witnesses have testified to such matters. In determining which photographs are admissible, the trial court must exercise its discretion and weigh the probative value against the possible inflammatory effect. *People v. Zekany*, 833 P.2d 774 (Colo.App. 1991).

Here, the prosecutor submitted fourteen photographs for review by the trial court. Defendant asserts that because the coroner did not take the photos and did not rely upon them in drafting his report, they were inadmissible. We disagree.

The trial court concluded that although seven of the photos could be characterized as graphic and inflammatory, they were admissible because they would help the coroner

relate his testimony to the wounds depicted in the photographs. In addition, the court determined that the photos had probative value as to defendant's culpable mental state, and that the probative value was not substantially outweighed by the danger of unfair prejudice.

We perceive no abuse of discretion by the trial court. As defendant acknowledges, most of the photos were small, close-up pictures that illustrated the location and size of the wounds. In addition, with regard to one photo that defendant asserts was particularly gruesome, the prosecutor offered to crop it to show only the victim's upper body. Defendant declined the offer. Consequently, defendant invited any error that may have occurred as a result of the admission of that photo in its uncropped state.

The judgment of conviction is affirmed.

Judge PLANK and Judge NIETO concur.