**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Brent WALDEN, Defendant–Appellant.**

No. 08CA0859.

Colorado Court of Appeals, Div. II.

June 25, 2009.

As Modified on Denial of Rehearing July 23, 2009.

**371**

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Brent Walden, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree criminal trespass and harassment. We affirm.

## I. Background

Defendant and the victim were married and had four children. The couple had some marital difficulties, and they separated in December 2006. The victim moved with the children into a duplex apartment.

Defendant and the victim continued to see each other. Defendant would occasionally come to her apartment to spend time with their children.

At trial, defendant and the victim offered conflicting testimony about the scope of defendant's permission to visit the apartment. The victim said that defendant had only been invited to the apartment on a few occasions to visit the children or to help her move some of her belongings. She stated that she argued with defendant frequently after the separation, and that she eventually told defendant that "he could not come past the doorway" when he came to visit the children. During one weekend visit with the children, the victim was napping. She awakened when defendant was touching her face. Startled and frightened, she told defendant to leave and informed him that "he wasn't allowed to come in [her] home."

Defendant testified that "there was never any discussion that [he] was not allowed in her house." He said that the victim asked him on several occasions to take care of her dog. He stated that he was allowed to enter the victim's home through the side door, which was left unlocked, to let the dog out.

The victim testified that, on February 18, 2007, she made plans to have dinner with her

boyfriend. Defendant telephoned her and asked her what she was going to do that evening. The victim replied it was "none of [defendant's] business." This response led to an argument over the victim's unwillingness to discuss her plans for the evening.

The victim and her boyfriend dined together, returned to the victim's apartment at about 10:30 p.m., and went into the bedroom. A bit later, the doorbell rang. The victim did not answer, and she then heard someone banging on the door. Suspecting that defendant was the visitor, she decided not to answer the door in order to avoid an argument.

The victim then heard footsteps inside her apartment. Fearing that defendant had gotten into the apartment through the unlocked side door, she went to the bedroom door to persuade him to leave. Defendant opened the door and entered the bedroom.

Defendant grabbed the victim, "threw [her] out of his way," and walked into the bathroom, where the boyfriend had retreated. Defendant pursued the boyfriend into a walk-in closet, and punched him in the face.

The victim saw defendant standing over her boyfriend. They were struggling. The boyfriend's nose was bleeding. She tried to pull defendant off of her boyfriend, but defendant threw her into a wall. At one point, he choked her. In order to break free, she punched defendant in the face.

The victim repeatedly asked defendant to leave. She broke free from his grasp, went to the kitchen, and called the police. Defendant then apologized to the boyfriend for hitting him, shook his hand, and left. A sheriff's deputy arrived within a few minutes, but defendant was gone.

According to defendant's testimony, he attended a sporting event with some friends on the evening of this incident. They went to a restaurant, and defendant left to go home at 8 p.m. During his drive, he telephoned the victim.

Upon arriving home, defendant took an Ambien pill, which his doctor had prescribed for him so that he could sleep better. Notably, during this same period, defendant had also been prescribed another medication to help him cope with work-related stress. Against the advice of his physician, defendant had suddenly stopped taking the medication a few days earlier, without gradually weaning himself off of it.

After taking the pill, defendant retired to his room for the night and went to sleep. He testified that the next thing he recalled was waking up the next morning at a friend's house. He noticed that he had a fresh black eye. He called his mother, and said that he had been in a fight with the victim.

The victim's father then called defendant, and told him that the police were looking for him. Defendant called the police and arranged to meet a sheriff's deputy. He executed a written statement in which he stated that his only recollection of the night before was going to the sporting event, driving home, and going to bed.

Defendant was charged with second degree burglary under section 18–4–203(2)(a), C.R.S.2008; two counts of third degree assault under section 18–3–204, C.R.S.2008; first degree criminal trespass under section 18–4–502, C.R.S.2008; and harassment under section 18–9–111(1)(a), C.R.S.2008.

At trial, defendant did not dispute committing the acts underlying the offenses, but he asserted the defense of involuntary intoxication. He argued that he did not act intentionally or knowingly, and, therefore, he should not be found criminally liable for his actions.

The prosecution completed its case at about 4 p.m. on the first day of trial. Before inviting defendant to present his case, the trial court advised him, outside of the jury's presence, of his right to testify or not to testify. *See People v. Curtis*, 681 P.2d 504, 514 (Colo.1984). The court asked defendant whether he had "made a decision about whether or not [he] wish[ed] to testify." Defendant responded, "I do wish to testify." After confirming with defendant that he had consulted with counsel about this decision, and that he was not under the influence of any intoxicants, the trial court found that defendant had decided to testify without any coercion, and had done so knowingly, voluntarily, and intelligently.

Next, the court informed the parties that it would take a short recess, after which it would call the jury back into the courtroom. The court inquired whether defendant's first witness, an expert who would testify about involuntary intoxication, would be available after the break to testify. Defense counsel replied that he had not anticipated that the prosecution would complete its case before the end of the first day of trial and, due to scheduling constraints, the expert would not be available until the next morning, at the earliest.

The court then stated that, to make use of the remaining time in the afternoon, defendant would be expected to testify after the recess. Defense counsel objected, expressing his preference that defendant testify after the expert because defense counsel wanted the expert to provide certain information before the jury heard from defendant. Defense counsel did not tell the court that defendant might change his mind about testifying based on his perception of the effectiveness or ineffectiveness of the expert's testimony. The court replied that it was "not wasting [the] jury's afternoon doing nothing." However, the court added that defendant could testify twice: once in the afternoon; and a second time on the following day after the expert had completed her testimony.

The court then ordered defendant to begin his testimony that afternoon. Defendant testified, but he declined the court's invitation to testify a second time after the expert.

Defendant's expert, a psychiatrist, testified the next day. She said that, because of a combination of three factors—the ingestion of several alcoholic drinks at dinner; the effect of defendant's stopping the antidepressant medication abruptly; and the effect of the Ambien pill—defendant became involuntarily intoxicated. She stated that it was her opinion that defendant was not aware or fully conscious during the events at the victim's apartment, and, therefore, he could not have acted intentionally or knowingly.

At one point during the expert's testimony on redirect examination, defense counsel inquired whether it was "more likely or more probable that a person who is non-violent

would commit violent acts while on the drug than without . . ." The trial court interrupted, stating that the question was improper because it sought to elicit inadmissible propensity evidence under CRE 404(b). Defense counsel changed course in his questioning, did not express any disagreement with the court's ruling, and did not make an offer of proof about what the answer to his question would have been.

During the instruction conference, the court rejected defendant's request for a jury instruction on the affirmative defense of mistake of fact. The court included an instruction on involuntary intoxication, along with the defense's requested instruction on voluntary intoxication. The court did not provide a definition of the words "voluntary" and "involuntary" in the instructions, and defendant did not ask that such definitions be included.

Defense counsel, in his closing argument, asked the jury to acquit defendant of all charges because defendant was involuntarily intoxicated, and he therefore could not form the intent necessary to commit any of the charged offenses. According to defense counsel, defendant was unaware that the combination of drinking the alcoholic drinks, ceasing the antidepressant medication, and taking the Ambien pill would put him into a hypnotic state, during which he would enter the victim's apartment and assault her and her boyfriend. Alternatively, defense counsel contended that defendant was voluntarily intoxicated by the alcoholic drinks he had consumed, and, therefore, he could not form the specific intent necessary to commit burglary or harassment.

The prosecution responded that it was up to the jury to decide whether defendant had, in fact, taken Ambien on the night of the incident, and whether the medication had any effect on him or caused him to act uncontrollably. Certain facts, such as statements defendant made during the attack, and his apology to the boyfriend, indicated that defendant was aware of what he was doing and that he acted intentionally and knowingly. Based on cross-examination of the defense expert, the prosecution empha-

sized that situations in which persons engage in complex behaviors while in an Ambien-induced sleep-state are infrequent and isolated, and that defendant's behavior could much more likely be explained by jealousy than as a reaction to the medication.

After two hours of deliberations, the jurors sent the court a note indicating that they were deadlocked and could not reach a unanimous verdict. The court asked the jurors whether they would be able to reach a consensus. They responded that they did not think so.

The court instructed the jury:

[S]ince it appears to the Court that your deliberations have been somewhat lengthy, without a verdict being reached, the Court wishes to suggest a few thoughts which you should consider in your deliberations, along with the evidence in the case and all of the instructions previously given.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching a verdict, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purposes of returning a verdict.

You are not partisans; you are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in this case. . . .

I'm going to ask you to go back into the jury room with that instruction in mind and continue your deliberations.

The jury subsequently returned a verdict convicting defendant of first degree criminal trespass and harassment, but acquitting him of all other charges.

## II. Defendant's Right to Remain Silent and Right to Testify

Defendant argues that the trial court violated his right to due process, his Fifth Amendment right against self-incrimination, and interfered with his Sixth Amendment right to counsel by requiring him to testify before his expert witness. We disagree.

### A. Constitutional Framework

■ Defendants have a constitutional right to testify at trial. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *see Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *People v. Myrick,* 638 P.2d 34, 38 (Colo.1981). However, because defendants also have a right to be free from compelled self-incrimination, they may elect not to testify, and the court must instruct the jury that no adverse inferences may be taken from their silence. U.S. Const. amend. V; *see Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *People v. Williams,* 100 P.3d 565, 566 (Colo.App.2004).

In *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the United States Supreme Court reviewed a Tennessee statute under which criminal defendants were required either to testify first in the presentation of their case, or to forfeit their right to testify. The Court noted that the traditional justification for this statute was to minimize defendants' ability to tailor their testimony to the testimony of other defense witnesses, which would have the putative benefit of increasing their veracity.

The Court's analysis emphasized the blanket, unconditional nature of Tennessee's statute.

Rather than risk the dangers of taking the stand, [a defendant] might prefer to remain silent at [the beginning of the defense case], putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice "in the unfettered exercise of his own will." [The statute] exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. This rule, in other

words, "cuts down on the privilege [to remain silent] by making its assertion costly."

*Id.* at 610–11, 92 S.Ct. 1891 (quoting *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (footnote omitted)). The Court was also concerned that the statute would likely disallow a defendant's rebuttal testimony in response to a government witness unless the defendant had testified first. *Id.* at 610 n. 4, 92 S.Ct. 1891.

The Court held that the Tennessee statute violated a defendant's Fifth Amendment right against self-incrimination because it made the choice to remain silent too costly: a defendant would be forced to make a decision about testifying before he or she could effectively evaluate the strength of the defense case. *Id.* at 609–12, 92 S.Ct. 1891. Without having an opportunity to observe how other witnesses testify, "a defendant may not know . . . whether his own testimony will be necessary or even helpful to his cause." *Id.* at 610, 92 S.Ct. 1891.

The Court also determined that the statute unconstitutionally interfered with a defendant's due process right to counsel by temporally limiting the decision of a defendant and his or her attorney whether, and at what point, the defendant should testify.

> Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case. Furthermore, the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later in the trial. The accused is thereby deprived of the "guiding hand of counsel" in the timing of this critical element of his defense.

*Id.* at 612–13, 92 S.Ct. 1891.

However, the Court also pointedly added that, "nothing we say here otherwise curtails . . . the ordinary power of a trial judge to set the order of proof." *Id.* at 613, 92 S.Ct. 1891.

Subsequently, in *New Jersey v. Portash,* 440 U.S. 450, 455–56, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), the Court explained that the Tennessee statute violated defendants' Fifth Amendment rights because it penalized them for asserting the right to remain silent at the beginning of the defense case by excluding them from testifying later in the trial.

Other courts have, after *Brooks,* analyzed a defendant's constitutional right to decide the timing of his testimony relative to other witnesses in the presentation of his case. These cases did not involve a mandatory statute like Tennessee's, and they focused on a trial court's authority to manage trials. No *Brooks* error was found where:

- The trial court required the defendant to testify before some witnesses, but not others. *Harris v. Barkley,* 202 F.3d 169, 172–74 (2d Cir.2000); *United States v. Singh,* 811 F.2d 758, 762–63 (2d Cir. 1987); *United States v. Leon,* 679 F.2d 534, 538 (5th Cir.1982); *State v. Turner,* 252 Conn. 714, 751 A.2d 372, 378 (2000); *Book v. State,* 880 N.E.2d 1240, 1249 (Ind.Ct.App.2008)(*Brooks* does not imply that a defendant has an unqualified right to testify last in the defense case);

- The defendant decided to testify before the trial court indicated that he or she would have to testify first, and therefore, the trial court's requirement that a defendant testify at a particular time had no influence on the defendant's decision whether to testify. *Leon,* 679 F.2d at 538; *Turner,* 751 A.2d at 384; *State v. Sale,* 110 Hawai'i 386, 133 P.3d 815, 820 (Haw.Ct.App.2006); *State v. Amos,* 262 N.W.2d 435, 437 (Minn.1978);

- The defendant created the circumstances that led the court to require him to testify at a particular time. *Harris,* 202 F.3d at 174; *Singh,* 811 F.2d at 762–63 (court refused to accept testimony of defense witnesses until a proper foundation was laid, which would have required defendant's testimony); *Turner,* 751 A.2d at 384 (order of witnesses resulted from defendant's late disclosure of alibi); and

- The court required defendants, if they chose to testify, to take the stand while

awaiting the arrival of defense witnesses. *People v. Lancaster,* 41 Cal.4th 50, 102–03, 58 Cal.Rptr.3d 608, 158 P.3d 157, 194 (2007) (defendant required to testify during recess in expert's testimony due to expert's need to leave midway during his testimony and return on the next day to complete it); *Soto v. State,* 751 So.2d 633, 639 (Fla.Dist.Ct.App.1999) (the court told the defendant that, if he were going to testify, he would have to testify then because no other defense witnesses were available; "There is no rule which requires the trial court to postpone the trial indefinitely to accommodate a defendant's indecision regarding whether he will testify."); *People v. Smith,* 260 A.D.2d 253, 253, 690 N.Y.S.2d 6, 7 (1999) ("The court exercised its power to control the flow of the proceedings in the interest of preventing the morning session of the trial from being wasted, and defendant's decision to testify was made with the assistance of counsel.").

*But see State v. Kido,* 102 Hawai'i 369, 76 P.3d 612, 619 (Haw.Ct.App.2003) (*Brooks* error occurred when trial court denied the defendant's request to testify after another defense witness, even though the witness was in the courthouse and could have testified without significant delay); *People v. Cuccia,* 97 Cal.App.4th 785, 791, 118 Cal. Rptr.2d 668, 673 (2002) (case was not analogous to *Brooks* because defendant testified, waiving the constitutional privilege against self-incrimination; however, because court informed jury that defendant had indicated he would testify, because there was no showing that defendant was not diligent in procuring the attendance of a witness, because the witness appeared the next day, and because defense counsel stated defendant probably would not have testified if he had been allowed to listen to the absent witness's testimony, defendant's waiver and testimony were coerced when trial court stated it would consider his case finished if he did not testify when directed; distinguished in *Lancaster,* 41 Cal.4th at 102–04, 58 Cal.Rptr.3d at 651, 158 P.3d at 194, because trial court there did not threaten to consider defendant's case completed unless defendant testified).

### B. Analysis

■ Defendant timely objected to the trial court's ruling, and thus he preserved his objection for our review. We therefore review de novo the issue whether the legal standard enunciated by *Brooks* applies to the facts of this case. *See People v. Matheny,* 46 P.3d 453, 462 (Colo.2002).

■ We must recognize that "[a] criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none." *Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). Therefore, trial judges "must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process." *Id.*

■ The order of proof at trial is a matter within the trial court's sound discretion, and courts are given wide latitude in deciding these matters. CRE 611(a) (stating that courts may exercise control over the order of interrogating witnesses so as to facilitate the ascertainment of truth, prevent waste of time, and protect witnesses). We recognize, however, that a court's discretion is always limited by the requirements of the state and federal constitutions. *See Merritt v. People,* 842 P.2d 162, 166–67 (Colo.1992).

■ Defendant argues that the trial court's denial of his request violated his right to due process, his Fifth Amendment right to remain silent, and his Sixth Amendment right to counsel. He contends that the court abused its discretion by requiring him to testify on the first day of trial, and that the court should have adjourned for the day and allowed defendant to testify on the following day, after the defense expert. He states that the prosecution created the gap at the end of the day because it finished its case unexpectedly early. We are not persuaded.

Although we recognize that a defendant may obtain tactical advantages by exercising control over the timing of his testimony, and we agree that a defendant has a constitutional right to exercise such control, for several reasons we do not conclude that the trial court's ruling undermined defendant's ability

to exercise his Fifth and Sixth Amendment and due process rights.

First, unlike *Brooks,* this case does not involve a statutory requirement that a defendant testify first or not at all. Indeed, there is no indication that the trial court would have required defendant to testify first had the expert been available to testify on the afternoon of the first day of trial.

Second, defendant was not denied his right to testify. He exercised that right.

Third, defendant was not denied his right to remain silent because he was not compelled to testify. He made his decision to testify before there was any discussion about the timing of his testimony, and so the court's decision concerning the timing of his testimony could not have influenced his decision. *See Leon,* 679 F.2d at 538; *Turner,* 751 A.2d at 384; *Sale,* 133 P.3d at 820; *Amos,* 262 N.W.2d at 437. Unlike in *Brooks,* the court did not give defendant a "now or never" ultimatum. *See Brooks,* 406 U.S. at 611, 92 S.Ct. 1891 (characterizing the pressuring of a defendant to take the stand by foreclosing the possibility of later testimony as an unconstitutional constraint on a defendant's Fifth Amendment right to remain silent).

Fourth, defendant was not denied his due process rights or his Sixth Amendment right to counsel. Unlike in *Brooks,* defendant made his tactical decision to testify, upon consultation with counsel, before the court issued any order concerning the timing of his testimony. Therefore, defendant and his attorney had an opportunity to evaluate the value of defendant's testimony without being confronted by the prospect of a penalty if defendant did not testify first. As a result, defendant was not denied the guidance of counsel. *See Harris,* 202 F.3d at 174; *Leon,* 679 F.2d at 538; *Smith,* 260 A.D.2d at 253, 690 N.Y.S.2d at 7.

Further, we note that the court informed defendant that he would be given a second opportunity to testify, after his expert had completed her testimony, if defendant or his counsel believed doing so would be helpful. Thus, any interference with defendant's ability to obtain advice from his attorney occa-sioned by testifying first was significantly reduced, if not eliminated.

Fifth, defendant did not contend in the trial court that his decision to testify was contingent on whether, after hearing the expert testify, he was satisfied with her performance on the stand, or that he might have changed his mind had the trial court granted his request to testify after his expert witness. We are, therefore, unable to discern how the court interfered with defendant's Fifth and Sixth Amendment rights. *See Sale,* 133 P.3d at 826.

Sixth, the court's decision was influenced by its concern that the jury's time not be wasted. This was a legitimate reason supporting the court's exercise of discretion over the order of witnesses because the court would have been required to adjourn for the day if defendant were to testify after his expert. *See Lancaster,* 41 Cal.4th at 50, 58 Cal.Rptr.3d 608, 158 P.3d at 194; *Smith,* 260 A.D.2d at 253, 690 N.Y.S.2d at 7; *Soto,* 751 So.2d at 639.

We are cognizant of *People v. Reed,* 216 P.3d 55, 58 (Colo.App.2008), in which another division of this court (1) recognized the importance of a defendant's discretion to decide whether to testify at trial; and (2) cited *Brooks* for the general proposition that "a defendant has the constitutional right to decide at what point during his or her defense he or she wishes to testify."

*Reed* discussed an issue different from the one we consider here, namely

> whether a declarant's out-of-court statement inculpating the declarant and a codefendant may be introduced as substantive evidence at their joint trial ... when the declarant is present in court but has not yet decided whether to testify.

In resolving the issue in *Reed,* which we deem significantly different, legally and factually, from the one we face here, the division did not address the authority or concepts that we analyze above. Thus, we conclude that *Reed* is readily distinguishable.

Our de novo review leads us to conclude that no *Brooks* error occurred here, and that defendant's right to due process, his Fifth Amendment right to remain silent, and his

378

Sixth Amendment right to counsel were not violated.

### III.  Trial Court's Sua Sponte CRE 404(b) Ruling

Defendant contends that the trial court's sua sponte ruling excluding testimony by his expert witness deprived him of his right to a fair trial before an impartial judge. Defendant contends that the trial court's evidentiary ruling barring the expert's testimony as improper character evidence was an abuse of the court's discretion. We disagree.

Trial courts have a duty to administer justice, control courtroom decorum, and ensure that the case is decided on the basis of relevant evidence and proper inferences. *Clements v. Davies*, 217 P.3d 912, 917 (Colo. App.2009); *People v. Perez*, 214 P.3d 502, 507 (Colo.App.2009).

Defendant's sole basis for his allegation that the trial judge was not impartial is that the judge, without being prompted by an objection from opposing counsel, barred defendant's expert from answering a question asked by defense counsel. We conclude defendant is not entitled to relief on this issue for two reasons.

First, we cannot efficiently evaluate defendant's contentions concerning the legal propriety of the trial court's ruling because defendant did not, at the time of the court's ruling, make a record of what evidence the trial court's ruling denied him. Therefore, we will not review this claim, even under a plain error review standard, because the trial court was not provided a clear indication of what the expert's answer to the question would have been. *See* CRE 103(2) (error in excluding evidence will not be reviewed when substance of evidence is not made known to court by an offer of proof); *People v. Washington*, 179 P.3d 153, 165–66 (Colo.App.2007), *aff'd*, 186 P.3d 594 (Colo.2008)(The defendant's "failure to make a proper offer of proof precludes him from raising this point of error on appeal, even subject to plain error review, because [an offer of proof as to what the witness said] . . . is essential to analyzing any claim of error with respect to the trial court's ruling.").

Second, we conclude that this single act does not indicate that the trial court was biased or prejudiced against defendant or his counsel. A judge's ruling on a legal issue is normally not indicative of bias or prejudice. *See People v. Lanari*, 926 P.2d 116, 119 (Colo.App.1996) (court's rulings, even if erroneous, do not, of themselves, indicate partiality). Further, there is no indication in the record of an attitude of hostility or ill will toward defendant or his attorney that would raise a reasonable question about the court's impartiality. *See People v. Fitzgibbons*, 909 P.2d 1098, 1101 (Colo.1996).

### IV.  Denial of Defendant's Jury Instructions

Defendant contends that the trial court's rejection of his jury instructions violated his constitutional right to due process, impermissibly lowered the prosecution's burden of proof, and deprived him of a jury trial on every element of the charged offenses and of his opportunity to present his defense. We are not persuaded.

#### A.  Standard of Review

A trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to justify giving the instructions. *Cassels v. People*, 92 P.3d 951, 955 (Colo.2004). Whether an instruction should be given to the jury is a matter committed to the sound discretion of the trial court. *People v. Renfro*, 117 P.3d 43, 48 (Colo.App.2004).

#### B.  Mistake of Fact Instruction

On appeal, defendant argues that the trial court erred by denying his requested instruction for mistake of fact as an affirmative defense to the charges of criminal trespass and burglary. Of these two offenses, defendant was convicted only of first degree criminal trespass. Hence, our analysis focuses only on how the court's denial of defendant's request for a mistake of fact instruction impacted his conviction on the trespass count. Because defendant properly preserved his objection, we review the trial

court's ruling under a harmless error standard. *Miller*, 113 P.3d at 748–49.

Under section 18–4–502, a person commits the crime of first degree criminal trespass if "such person knowingly and unlawfully enters or remains in a dwelling of another." Here, defendant requested the following jury instruction:

> It is an affirmative defense to the crime[ ] of Trespass ... that defendant engaged in the prohibited conduct under a mistaken belief, and due to this mistaken belief by defendant he did not form the particular mental state required in order to commit the offense.
>
> In addition to proving all of the elements of the crime charged beyond a reasonable doubt, the prosecution also has the burden to disprove the affirmative defense beyond a reasonable doubt.

In our view, defendant sought to add an element already contained within the offense. The effect of defendant's instruction, if the jury were to accept defendant's contention that he was acting under the belief he had permission to enter and stay at his wife's apartment, would merely be to negate the requisite "knowing" element in the crime of trespass. However, the prosecution was already required to prove beyond a reasonable doubt that defendant had knowingly entered the victim's apartment without permission. *See People v. Oram*, 217 P.3d 883, 897 (Colo. App.2009) (Connelly, J., concurring and dissenting) (Colorado's burglary statute requires proof that defendants know their entry is unlawful); *cf. People v. McNeese*, 892 P.2d 304, 308 n. 11 (Colo.1995)("Generally, a person who has permission to enter an apartment from one who is a tenant of the apartment does not enter the apartment unlawfully or commit a criminal trespass."). In fact, counsel for both parties asked the victim and defendant questions about whether defendant had permission to enter the victim's home, or whether he had any basis for reasonably believing that he had such permission.

We find no error in the trial court's rejection of defendant's instruction on mistake of fact. The instruction was unnecessarily duplicative of the elements the prosecution was already required to prove beyond a reasonable doubt. *See People v. Bush*, 948 P.2d 16, 19 (Colo.App.1997). The jury's finding that defendant was guilty of trespass necessarily repudiated his contention that he entered the victim's apartment under the mistaken belief that he was allowed to enter. *See id.*

### C. Instruction Defining Voluntary and Involuntary Intoxication

■■ Defendant did not request a jury instruction defining the words "intoxication," "voluntary," and "involuntary," nor did he object to the absence of such an instruction during the jury instructions conference. Hence, we review the trial court's asserted failure to provide an instruction defining these terms for plain error. *Miller*, 113 P.3d at 748–49.

■ Plain error is error that is obvious and substantial, or grave. It seriously affects a defendant's substantial rights, and the record must reveal a reasonable possibility that the error contributed to the defendant's conviction. *People v. Koon*, 724 P.2d 1367, 1371 (Colo.App.1986).

In support of his argument that the absence of these definitions constituted reversible error, defendant argues that (1) the common definitions of the words are inconsistent with their legal definitions; (2) this inconsistency may have confused the jury and deprived it of information it might have relied on to acquit him; and (3) the omission of these definitions deprived him of the opportunity to present his defense and undermined the fundamental fairness of the trial. We are not persuaded.

■ When definitions are not provided in a jury instruction, the jury is presumed to employ the common meaning of the words used. *Lascano v. Vowell*, 940 P.2d 977, 982 (Colo.App.1996). We first observe that the instructions that were provided adequately apprised the jury of the correct legal standards for defendant's defenses, and we conclude that, although the legal meaning of the terms "intoxication," "voluntary," and "involuntary" may depart, at least to some degree, from the meaning of these terms in common usage, this inconsistency did not act to defen-

dant's detriment. Rather, the absence of the legal definition of these terms worked to defendant's advantage because the jury could have accepted defendant's theory of the case without having to consider whether the circumstances of his intoxication fit precisely within the legal meaning of the words "voluntary" and "involuntary." This conclusion is supported by defendant's closing argument, which discussed these terms in detail without any challenge from the prosecution. *Cf. People v. Valdez*, 183 P.3d 720, 724 (Colo.App. 2008) (error in instruction harmless when it could only have inured to defendant's benefit).

Thus, we conclude that the omission of these definitions did not undermine the fundamental fairness of the trial or compromise the reliability of the conviction, and, as a result, was not plain error. *See People v. Mullins*, 104 P.3d 299, 301 (Colo.App.2004); *see also People v. Fichtner*, 869 P.2d 539, 545 (Colo.1994)(appellate court will not reverse when "there is no reasonable possibility that the incomplete jury instruction so contributed to the defendant's conviction that it constitutes plain error").

### V. Court's Modified-*Allen* Deadlocked Jury Instruction

Defendant contends that the trial court's instruction was defective because the court did not inform the jurors that they would be excused and a mistrial would be declared if they were not able to reach a unanimous verdict. We disagree.

Defendant did not object to the trial court's instruction to the jury about how to proceed after the jury informed the court it was deadlocked. Thus, we review the court's instruction under a plain error standard. *Miller*, 113 P.3d at 748–49.

Upon being informed that the jurors have reached an impasse, the trial court may provide an additional "modified-*Allen*" instruction to encourage the jury to try to reach a unanimous verdict. *People v. Raglin*, 21 P.3d 419, 423 (Colo.App.2000). Such an instruction is proper, so long as it is not coercive. *Id.*

We conclude that the instruction the court gave in this case was not coercive. The court instructed the jurors that they should try to arrive at a consensus, but only if they could do so "without violence to individual judgment." The court stated that "it wished to suggest a few thoughts," and concluded by stating, "I am going to ask you to go back . . . and continue your deliberations."

We do not perceive a reasonable likelihood under these circumstances that the jury felt coerced into reaching a compromise verdict. *See id.; cf. know People v. Lazdins*, 728 P.2d 354, 356 (Colo.App.1986)(finding that instruction and comments coerced jury into reaching compromise verdict where jury was rushed to reach a verdict before lunch). Therefore, the instruction that the trial court gave in this case was not error, let alone plain error.

The judgment is affirmed.

Judge CASEBOLT and Judge MILLER concur.