OPINION
O'SCANNLAIN, Circuit Judge:
We must decide whether a state appellate court unreasonably applied Supreme Court precedent in upholding a conviction and resulting sentence against a claim that the petitioner was forced to testify in violation of his rights to remain silent and to due process.
I
Petitioner Frank O. Loher was convicted in Hawaii state court of attempted sexual assault and given an extended-term sentence, all of which was affirmed on appeal.[1] He subsequently filed this petition for a writ of habeas corpus in federal district court. Because his claims relate to matters of trial procedure, the trial proceedings must be set out in great detail.
A
On November 14, 2000, Loher’s trial in Hawaii circuit court began at 9:06 a.m., and the State’s first witness took the stand at approximately 9:30 a.m. The prosecution presented four witnesses and then rested at around 2:15 p.m. The court recessed until about 2:30 p.m. At that point, Loher’s trial counsel, Neal Kugiya, requested a continuance to November 16, the following trial day, because none of Loher’s witnesses was present in court. Kugiya argued that he had not anticipated that the prosecution’s case would “finish this early ... because they have quite a number of people on the witness list,” and that he had attempted during the break to get witnesses to come to court, unsuccessfully. The trial court denied the request and the following exchange occurred between the court, Kugiya, and the prosecutor, Thalia Murphy:
THE COURT: Under Rule 611 the Court has discretion to exercise control over the mode and order of interrogation. What the Court is going to do because there’s more than enough time left in the day,[2] we’re going to continue with the trial. I’m going to allow the defense to call [Loher] to testify, then after he completes testifying, he can call whatever witnesses that’s on call that may arrive today. We can continue with that, and then we can call the remaining witnesses on Thursday morning.
KUGIYA: Okay. Well, I need to note my objection to that, Your Honor, because [Loher] does have a right not to testify, and based on testimony of other witnesses, there may not be a need for him to testify if we can get everything we need across from'the other people. So in this vein the Court is actually forcing him to take the stand because now we have nobody to call, and you’re saying, Well, we can call [Loher], but as a strategic manner in planning for our case, he was going to be the last witness I call, and depending how it went with *1109 the other witnesses, we may not need to call him because we can get everything that we need through the other witnesses.
So, in fact, now that we’re being forced to call him as first witness in a sense is prejudicial to [Loher] because he’s being forced to testify when he, in essence, we had not decided fully whether or not he would testify for sure.
THE COURT: The Court does not find the argument persuasive. The Court believes that it was the responsibility or is the responsibility of counsel to determine when witnesses would be available. Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.
Defense counsel has hopefully prepared for this case, so should be aware at the present time what the witnesses that he intends to call will testify. And having prepared and having a knowledge as to what they will say, since they are the defense witnesses, then they should be in the position to know whether the defendant should testify.
So the Court believes it is not persuasive that defense counsel should now argue to this Court, after the Court had denied his request to delay the trial till Thursday by saying that he does not know what his own witnesses will say and depending what they say, he will then make the decision whether his client’s going to testify.
The Court would also note that during the pretrial conferences, as well as in the opening statement, the defendant has asserted an alibi that he was not present at the time, and that where the — his location would be during cer-
tain times defense counsel has also represented to the Court that his client is going to testify.
The Court is not persuaded by his argument and is concerned that this may be manipulative in order to obtain the relief that the Court had not granted.
KUGIYA: Well, if I can respond.
THE COURT: Excuse me, and the Court is unpersuaded by your argument. So we’re going to proceed. You may call your client to testify, or if you wish, not to testify or engage in Tackibana[3] at this time, and he may waive his testimony. That is between you and your client. So I’m going to take a recess, and before we do that, is your client going to testify or is he going to waive his right to testify?
KUGIYA: I’d like to discuss that matter with him.
MURPHY: I can leave the courtroom so that they can remain here.
KUGIYA: Your Honor, if I can just say we’re not trying to delay this trial in any way. Its just that it was my understanding from conversations that the State would probably, you know, run the whole day. And so, you know, try not to inconvenience witnesses. I don’t want them coming around today on Tuesday, knowing that we wouldn’t get to them. It was my understanding that we would not start our case until Thursday, and that’s why I indicated to them that we would probably start Thursday morning.
THE COURT: I understand what you’re saying.
KUGIYA: It’s not for any purpose of delay....
*1110 THE COURT: Court will stand in recess.
After the recess, Loher testified beginning at' 2:45 p.m. During cross-examination, prosecutor Murphy elicited damaging testimony from Loher.
After the trial concluded on November 16, the jury found Loher guilty of attempted sexual assault but acquitted him of attempted kidnapping. After trial, Kugi-ya moved to withdraw as counsel because Loher had filed a complaint against him with the Hawaii Office of Disciplinary Counsel. Randal I. Shintani was appointed as Loher’s counsel and represented Loher in his sentencing hearing. Following such hearing, the circuit court granted the prosecutor’s motion for an extended term of imprisonment, finding that Loher was a persistent offender under Hawaii Revised Statutes § 706-662(1).
B
With Shintani’s assistance, Loher appealed to the Hawaii Intermediate Court of Appeals (“ICA”), claiming there was insufficient evidence to convict him, ineffective assistance of trial counsel, instructional error, and sentencing error. The Hawaii ICA affirmed Loher’s conviction and sentence in Loher I.
C
Loher then filed a pro se post-conviction motion in Hawaii circuit court pursuant to Hawaii Rule of Penal Procedure 35 (2002) (“Rule 35 Motion”), arguing in part that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny required that a jury — rather than the court — find the facts necessary to impose his extended sentence. After the circuit court denied the motion, Loher appealed, and the Hawaii ICA affirmed in Loher II.
D
Next, Loher filed a pro se post-conviction petition, also in Hawaii circuit court, under Hawaii Rule of Penal Procedure 40 (“Rule 40 Petition”) in which he raised dozens of claims. After the trial judge rejected Loher’s claims without a hearing, Loher appealed, again pro se. Although Loher’s briefing did not clearly set forth his claims, the Hawaii ICA addressed his arguments to the extent it understood them. In Loher III, it construed Loher’s petition as claiming that the trial court violated his constitutional rights by forcing him to testify and that Loher’s appellate counsel rendered ineffective assistance by failing to raise the “forced testimony” issue in Loher’s direct appeal. The court remanded for a hearing on Loher’s ineffective assistance of appellate counsel (“IAAC”) claim.
On remand, the circuit court reviewing the Rule 40 petition (“Rule 40 court”) heard testimony from appellate counsel Shintani, Loher, and trial counsel Kugiya. The Rule 40 court received into evidence the trial transcript and Shintani’s opening brief on appeal. After considering both the trial record and the record developed on remand, the Rule 40 court issued findings of fact and conclusions of law. It concluded that the trial court did not violate Loher’s constitutional rights and that, therefore, Shintani’s failure to raise the forced testimony issue did not constitute ineffective assistance of appellate counsel.
On appeal, the Hawaii ICA affirmed the Rule 40 court’s decision in a reasoned opinion in Loher IV.
E
In due course, Loher filed a petition for a writ of habeas corpus in the federal district court. Upon review of a magistrate judge’s findings and recommendations in *1111 Loher V, the district court in Loher VI granted the writ on all three of Loher’s claims: (1) that the trial court violated Loher’s constitutional rights by forcing him to testify; (2) that Loher’s appellate counsel rendered ineffective assistance for failing to raise the forced testimony issue; and (3) that the enhancement of his sentence based on judge-found facts violated Apprendi. Loher VI, 23 F.Supp.3d at 1186, 1200. Having granted relief on all three grounds, the district court ordered Hawaii to release or to retry Loher. Id. at 1200-01. It then stayed that order pending this appeal, which was timely filed.
II
A
We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and “review de novo the district court’s grant of a § 2254 habeas petition.” Wilkinson v. Gingrich, 806 F.3d 511, 515-16 (9th Cir. 2015) (as amended) (citing Doody v. Ryan, 649 F.3d 986, 1001 (9th Cir. 2011) (en banc)). We review the district court’s determination of the appropriate remedy for a constitutional violation on a habeas petition for abuse of discretion. Chioino v. Keman, 581 F.3d 1182, 1184 (9th Cir. 2009).
B
A state prisoner’s habeas petition “shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.”
28 U.S.C. § 2254(d). “This is a ‘difficult to meet’ and ‘highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.’ ” Cullen v. Pinholster, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)).
1
The “‘contrary to’ and ‘unreasonable application of clauses in § 2254(d)(1) are distinct and have separate meanings.” Moses v. Payne, 555 F.3d 742, 751 (9th Cir. 2009) (citing Lockyer v. Andrade, 538 U.S. 63, 73-75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). Under the “contrary to” clause of § 2254(d)(1), a federal court may grant relief only when “the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
Under the “unreasonable application” clause of § 2254(d)(1), “a state-court decision involves an unreasonable application of [the Supreme Court’s] precedent if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner’s case.” White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1705, 188 L.Ed.2d 698 (2014) (quoting Williams, 529 U.S. at 407-08, 120 S.Ct. 1495). “And an ‘unreasonable application of [the Supreme Court’s] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.” Woods v. Donald, — U.S. -, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quoting *1112 Woodall, 134 S.Ct. at 1702). “To satisfy this high bar, a habeas petitioner is required to ‘show that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.’ ” Id. (quoting Richter, 562 U.S. at 103, 131 S.Ct. 770).
Importantly, a state court does not unreasonably apply the Supreme Court’s holdings by refusing to extend a legal principle to a new context. See Woodall, 134 S.Ct. at 1706. While the “difference between applying a rule and extending it is not always clear, ... [t]he critical point is that relief is available under § 2254(d)(1)’s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no ‘fair-minded disagreement’ on the question.” Id. at 1706-07 (citations omitted).
2
Under § 2254(d)(2), fact-based challenges “fall into two main categories.” Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). “First, a petitioner may challenge the substance of the state court’s findings and attempt to show that those findings were not supported by substantial evidence in the state court record.” Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004)). “Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way.” Id. (citing Taylor, 366 F.3d at 999, 1001).
A state-court decision “will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (emphasis added). “While ‘not impossible to meet,’ that is a ‘daunting standard — one that will be satisfied in relatively few cases,’ especially because we must be ‘particularly deferential to our state-court colleagues.’ ” Hernandez v. Holland, 750 F.3d 843, 857 (9th Cir. 2014) (quoting Taylor, 366 F.3d at 1000). Thus, a “state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.” Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). And we “may not second-guess a state court’s fact-finding process unless, after review of the state-court record,” we determine “that the state court was not merely wrong, but actually unreasonable.” Taylor, 366 F.3d at 999.
Thus, when “a petitioner challenges the substance of the state court’s [factual] findings, ‘it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.’ ” Hibbler, 693 F.3d at 1146 (quoting Taylor, 366 F.3d at 1000). And when a petitioner challenges “the state court’s procedure, mere doubt as to the adequacy of the state court’s findings of fact is insufficient; we must be satisfied that any appellate court to whom the defect in the state court’s fact-finding process is pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Id. at 1146-47 (internal quotation marks and alterations omitted).
C
When reviewing a habeas petition, “we look to ‘the last reasoned state-court decision.’ ” Miller v. Blacketter, 525 F.3d 890, 894 n. 2 (9th Cir. 2008) (quoting Van *1113 Lynn v. Farmon, 347 F.3d 735, 738 (9th Cir. 2003)). Here, the last reasoned state court decision is the unpublished, post-remand decision of the Hawaii ICA, Loher IV.
Ill
A
Loher first argues that the Hawaii ICA’s rejection of his “forced testimony” claim involved an unreasonable application of Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).
1
In Brooks, the Supreme Court held that a Tennessee statute, which required a criminal defendant to testify before any of his witnesses, violated the defendant’s rights to remain silent and to due process. See 406 U.S. at 610-13, 92 S.Ct. 1891. It reasoned that the “defendant’s choice to take the stand carries with it serious risks of impeachment and cross-examination; it ‘may open the door to otherwise inadmissible evidence which is damaging to his case.’ ” Id. at 609, 92 S.Ct. 1891 (quoting McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)). Since a defendant cannot be certain of what his witnesses will say, he “may not know at the close of the State’s case whether his own testimony will be necessary or even helpful to his cause.” Id. at 610, 92 S.Ct. 1891. “Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed.” Id. Keeping the defendant “off the stand entirely unless he chooses to testify first ... casts a heavy burden on a defendant’s otherwise unconditional right not to take the stand.” Id. at 610-11, 92 S.Ct. 1891 (footnote omitted). The Court held that the Tennessee statute violated “an accused’s constitutional right to remain silent insofar as it require[d] him to testify first for the defense or not at all.” Id. at 612, 92 S.Ct. 1891.
The Brooks Court also concluded that the statute violated the defendant’s right to due process. It explained,
Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense — particularly counsel — in the planning of its case. Furthermore, the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later in the trial. The accused is thereby deprived of the ‘guiding hand of counsel’ in the timing of this critical element of his defense. While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand.
Id. at 612-13, 92 S.Ct. 1891.
2
In Loher IV, the Hawaii ICA reviewed two of its prior decisions applying Brooks to a trial court’s ruling that a defendant testify first or not at all: State v. Kido, 102 Hawai'i 369, 76 P.3d 612 (Haw. Ct. App. 2003), and State v. Sale, 110 Hawai’i 386, 133 P.3d 815 (Haw. Ct. App. 2006). Loher IV, 2011 WL 2132828, at *4, *6-8.
In Kido, the defendant wanted to call a witness who was in the same courthouse, but was occupied in a different hearing. See 76 P.3d at 614-15. When the witness was not immediately available, the trial court required the defense to call the only *1114 witness present, the defendant. Id. at 615. .On appeal, the Hawaii ICA identified several situations in which courts had held that no Brooks violation occurred, including “where the defendant’s decision whether to testify congealed before the trial court’s action[ ] and/or ... where the defendant himself created the exigency for taking his testimony first.” Id. at 619 (citations omitted).[4]
In Loher IV, the Hawaii ICA noted such “generally-recognized exceptions” to Brooks and then upheld the Rule 40 court’s factual findings and legal conclusion that both of the exceptions applied in Loher’s case. Loher IV, 2011 WL 2132828, at *7-10 (quoting Loher III, 193 P.3d at 449 n. 6 (citing Kido, 76 P.3d at 619)). Specifically, it affirmed the findings that Loher had decided “to take the stand no matter what” before the trial court required him to testify immediately or not at all; that delay from a continuance would not have been “trifling”; and that defense witnesses were not present the first day of trial because Loher’s counsel failed to confer with the prosecution about the length of its case and erred in estimating the same. Id. at *9-10. Given these findings, the Hawaii ICA concluded that the trial court had not violated Brooks. Id. at *10.
3
A “state court’s determination that a claim lacks merit precludes federal habeas relief so long as ‘fairminded jurists could disagree’ on the correctness of the state court’s decision.” Woods v. Etherton, — U.S. -, 136 S.Ct. 1149, 1151, 194 L.Ed.2d 333 (2016) (per curiam) (quoting Richter, 562 U.S. at 101, 131 S.Ct. 770). Such disagreement is possible here for at least three reasons.
First, Brooks itself addressed a blanket statutory requirement that a defendant testify before his other witnesses, regardless of whether such witnesses were available. It did not address a trial court’s extemporaneous denial of a continuance, sought in order to procure defense witnesses, where the defendant was responsible for the absence of such witnesses. Thus, the Hawaii ICA had to consider how the principles announced in Brooks applied to different facts. Extending Brooks to this new context involves interpretation and reasoning over which fairminded jurists could disagree. See Woodall, 134 S.Ct. at 1706-07.
Second, in the context of Loher’s request for a continuance, fairminded jurists could disagree over how to balance the rights recognized in Brooks with the competing concern for a trial court’s ability to manage trials recognized in other Supreme Court opinions. With regard to continuances in state trials, the Court has remarked:
Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances....
Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Similarly, when discussing federal trials, the Court has stated:
Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice. *1115 The judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion.
Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (alterations and internal quotation marks omitted). Thus, at a certain point, the trial court must have discretion to manage the trial. Fairminded jurists could disagree over where to draw the line between the trial court’s authority and the constitutional rights recognized in Brooks.
Third, Brooks itself showed solicitude for the trial court’s ability to manage trials. It cautioned that “nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof.” 406 U.S. at 613, 92 S.Ct. 1891. A fairminded jurist could interpret Brooks narrowly and emphasize the trial court’s discretion to set the order of proof.
Thus, a fairminded jurist could conclude that the Hawaii ICA’s decision was correct based on: (1) the fact that Brooks addressed significantly different circumstances; (2) the Supreme Court’s recognition elsewhere that trial courts must have broad power to manage trials and to deny continuances; and (3) the Supreme Court’s solicitude in Brooks for the trial court’s ability to set the order of proof.[5] Specifical *1116 ly, such a jurist could readily conclude that a trial court may require a defendant to testify, if at all, while awaiting the arrival of other defense witnesses where the defendant is responsible for the absence of such witnesses.[6] “No precedent of [the Supreme Court] clearly forecloses that view.” Etherton, 136 S.Ct. at 1152. Brooks simply did not address such a situation. Moreover, it is not “so obvious” that the rules set forth in Brooks apply here “that there could be no ‘fairminded disagreement’ on the question.” See Woodall, 134 S.Ct. at 1706-07.
Similarly, a fairminded jurist could conclude that a trial court may require a defendant to testify, if at all, to avoid wasting two hours of trial time.[7] That view is likewise not “clearly foreclose[d]” by Supreme Court precedent. Etherton, 136 S.Ct. at 1152. Brooks did not address the waste of trial time as a justification for requiring a defendant to testify first. Instead, it addressed a different justification: preventing the defendant’s testimony from being influenced by the testimony of other defense witnesses. See Brooks, 406 U.S. at 607, 92 S.Ct. 1891. Although Judge Smith’s partial dissent argues that the justification in Brooks was “far more compelling” and that the “trade-off was grossly disproportionate,” Smith Op. at 1127, no Supreme Court holding clearly establishes such propositions. To the contrary, as discussed above, several Supreme Court opinions indicate that the trial court’s ability to manage the trial is a compelling interest war *1117 ranting the trial court’s broad discretion to deny continuances and to set the order of proof. See Morris, 461 U.S. at 11, 103 S.Ct. 1610; Geders, 425 U.S. at 86, 96 S.Ct. 1330.
In sum, extending Brooks to a trial court’s extemporaneous ruling involves an inherent amount of extrapolation and requires balancing the rights recognized in Brooks with the competing concern for a trial court’s ability to manage trials effectively. A fairminded jurist could readily conclude that Brooks does not require a court to waste two' hours of trial time waiting for a defendant’s other witnesses to arrive when the defendant is primarily responsible for the absence of such witnesses. Thus, the Hawaii ICA’s-conclusion that no Brooks violation occurred was not “so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Etherton, 136 S.Ct. at 1151 (quoting Woodall, 134 S.Ct. at 1702).
We therefore conclude that the Hawaii ICA’s rejection of Loher’s Brooks claim was not objectively unreasonable.
B
Loher also argues that the creation of the post-conviction record and the Hawaii ICA’s reliance on it in Loher IV were objectively unreasonable under both § 2254(d)(1) and § 2254(d)(2).
1
The post-conviction record was created as a result of the Hawaii ICA’s remand in Loher III. There, the court construed Lo-her’s petition as raising both a Brooks claim and an IAAC claim for Shintani’s failure to raise Brooks in Loher’s direct appeal. Loher III, 193 P.3d at 448.
It observed that, when Hawaii courts evaluate IAAC claims, “[c]ounsel’s scope of review and knowledge of the law are assessed.” Id. at 449 (quoting Briones v. State (Briones II), 74 Haw. 442, 848 P.2d 966, 978 (1993)). In Briones II, the Hawaii Supreme Court explained that the “counsel whose performance is being evaluated is given an opportunity at the trial court level to explain his or her understanding of the issues presented for review.” Briones II, 848 P.2d at 978 n.17 (citing Haw. R. Penal P. 40(f)). It further instructed that, “[i]n the absence of sufficient evidence in the record on appeal, an appellate court should remand for the development of such a record.” Id.
In Loher III, the Hawaii ICA remanded to develop the record on Loher’s IAAC claims. Because “Loher’s appellate counsel ha[d] not been given an opportunity to explain his understanding of the ‘forced testimony’ issue, and the issue ha[d] not been fully briefed and argued at a hearing on the' Rule 40 Petition,” the Hawaii ICA was “unable to determine why the [Brooks] issue was not raised.” Loher III, 193 P.3d at 449. In “the absence of a sufficient record on this appeal, including an opportunity for Loher’s former appellate counsel to be heard,” the Hawaii ICA concluded that it “must remand for the development of such a record on the issue of whether Loher had ineffective assistance of appellate counsel.” Id. at 450. The court noted that a remand would assist in determining not only why Shintani did not brief the Brooks issue but also whether a Brooks claim was “potentially meritorious.” Id. at 449.
2
“AEDPA does not provide any specific guidance on what sort of procedural deficiencies will render a state court’s fact-finding unreasonable” under § 2254(d)(2). Hibbler, 693 F.3d at 1147. When determining whether a state’s fact-finding procedures were reasonable, we *1118 must engage in a “fact-bound and case-specific inquiry.” Id.
Here, to assist in evaluating the IAAC claim, the Hawaii ICA remanded for the entirely reasonable purpose of providing Loher’s appellate counsel an opportunity to explain why he did not brief the Brooks issue. Loher III, 193 P.3d at 449. While Loher argues that the remand was unnecessary because the existing trial record supported a Brooks claim, he does not explain why the state courts were required •to consider the Brooks claim first without collecting further evidence on the IAAC claim. Consequently, he has failed to establish that the remand was objectively unreasonable under § 2254(d)(2).
Moreover, Loher cites no Supreme Court authority suggesting that an appellate court should not remand for the collection of evidence relevant to an IAAC claim.[8] Thus, ordering the remand was not an objectively unreasonable application of Supreme Court precedent under § 2254(d)(1).
3
Loher also argues that it was objectively unreasonable “to adduce testimony from either trial counsel or the petitioner on remand in the post-conviction proceeding, when the issue to be litigated was simply whether appellate counsel had been ineffective for missing the Brooks issue.” But the Rule 40 court did not request testimony from Loher and Kugiya. Instead, Lo-her’s counsel called Loher to the stand, where he asserted that he had not intended to testify at trial and that he had expressed such intent to Kugiya. This caused the State to call Kugiya to the stand to rebut Loher’s testimony.
Loher may not complain to us that the Rule 40 court considered testimony relevant to the Brooks claim when his counsel either introduced or opened the door to such testimony. See United States v. Myers, 804 F.3d 1246, 1254 (9th Cir. 2015) (as amended) (citation omitted) (“The doctrine of invited error prevents a [party] from complaining of an error that was his own fault.”). Moreover, Loher has cited no Supreme Court authority establishing that a court must restrict its consideration of a Brooks claim to the trial record. Therefore, the Rule 40 court’s hearing testimony from Loher and Kugiya was not objectively unreasonable under § 2254(d)(1) or § 2254(d)(2).
4
Finally, Loher challenges the Hawaii ICA’s reliance on the facts found by the Rule 40 court.
The Hawaii ICA concluded that such findings were supported by substantial evidence. Loher IV, 2011 WL 2132828, at *9. First, it reasonably upheld the finding that Loher’s decision to testify “congealed” before the trial court’s ruling. Id. It pointed to numerous assertions by Kugiya in the post-conviction record and the trial court’s contemporaneous statement that Kugiya had represented to the court that Loher was going to testify. Id. To the extent that those statements conflicted with Loher’s post-conviction testimony and Kugiya’s *1119 contemporaneous statements, the appellate court reasonably deferred to the Rule 40 court, which was in the best position to judge the credibility of the witnesses. Id.
Second, the Hawaii ICA reasonably upheld the finding that Loher was responsible for the situation that required him to testify because his witnesses were not present. Id. at *9-10. On appeal, Loher did not challenge the Rule 40 court’s “findings that (1) Kugiya made a mistake as to the timing of the State’s ease, and (2) there was no evidence that Kugiya ever consulted with the prosecutor as to the length of the State’s case or the number of witnesses the State would actually call.” Id. at *10. With these facts uncontested, the Hawaii ICA’s reliance on them was certainly reasonable.
Loher argues that, nevertheless, Kugiya was not responsible for the situation because the prosecution unexpéctedly called only four of the fourteen witnesses on its witness list. However, Loher conceded at oral argument that “both sides typically over-designate the number of witnesses that they are going to call” and that “it is incumbent upon trial counsel to talk to one another as the trial begins” to ascertain which witnesses would realistically be called and how long such testimony would take.[9] Because Kugiya was responsible for taking such steps to determine when the defense should be ready to begin its case and did not do so, the Hawaii ICA reasonably upheld the determination that Kugiya was responsible for the absence of other defense witnesses.
Thus, we reject Loher’s challenges to the creation of the post-conviction record and to the Hawaii ICA’s rebanee on the facts found on remand.
IV
A
Loher persuasively argues that Hawaii has waived any challenge to the district court’s grant of relief for ineffective assistance of appellate counsel.
“We address ‘only issues which are argued specifically and distinctly in a party’s opening brief.’” Chadd v. United States, 794 F.3d 1104, 1110 n. 4 (9th Cir. 2015) (quoting Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994)). “We adhere to this approach for sound prudential reasons.” Ground Zero Ctr. for Non-Violent Action v. U.S. Dep’t of Navy, 383 F.3d 1082, 1091 n. 7 (9th Cir. 2004). “The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” NASA v. Nelson, 562 U.S. 134, 148 n. 10, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011) (quoting Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) *1120 (“Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.”); Abovian v. INS, 219 F.3d 972, 981 (9th Cir. 2000) (Wallace, J., dissenting) (“There is a risk that the court, lacking the analysis ordinarily provided by adversarial parties, will reach the wrong conclusion on the merits and create poor precedent... .”).[10]
Here, in its opening brief, the State did not argue at all that the district court’s grant of relief for IAAC should be reversed. After Loher argued in his response brief that Hawaii had waived this issue, the State did not even address the issue in its reply brief.
The district court granted Loher relief on three separate grounds: (1) the Brooks violation (“Ground I”); (2) IAAC for failure to raise the Brooks claim (“Ground II”); and (3) the Apprendi violation (“Ground III”). Loher VI, 23 F.Supp.3d at 1186, 1200. Because Hawaii did not object to the magistrate judge’s recommendation that the court grant relief on Ground III, the court adopted that recommendation without analysis. The district court then analyzed Ground I and Ground II in separate sections of its opinion. See id. at 1193-1200 (Section I); id. at 1200 (Section II).[11]
These two grounds, although both related to the merits of the underlying Brooks claim, are independent from each other. For the Brooks claim, the question is whether Loher IV involved an unreasonable application of Brooks, and we have concluded it was not. See supra Section III.A. For the IAAC claim, the question would be whether Loher IV was contrary to, or involved an unreasonable application of, Strickland. See Hurles v. Ryan, 752 F.3d 768, 785 (9th Cir. 2014); see also Smith, 528 U.S. at 285-88, 120 S.Ct. 746 (confirming that Strickland is the proper standard for IAAC claims).
Judge Tallman’s partial dissent suggests that our conclusion in Section III.A — that Loher IV did not involve an objectively unreasonable application of Brooks — compels the conclusion that Lo-her IV was neither contrary to, nor an objectively unreasonable application of, Strickland. Tallman Op. at 1125. It does not. Under Strickland, the question is whether “appellate counsel’s representation fell below an objective standard of reasonableness” and, “but for counsel’s errors, a reasonable probability exists that he would have prevailed on appeal.” Hurles, 752 F.3d at 785 (citation omitted). We have concluded that the Hawaii ICA’s rejection of the Brooks claim in a post-conviction appeal, based on a post-conviction record, did not involve an objectively unreasonable application of Brooks. See Section III.A. However, such conclusion simply does not answer whether a “reasonable probability exists” that Loher would have prevailed in his direct appeal, based *1121 on the trial record, if his counsel had raised a Brooks claim.[12]
Because Hawaii has failed to argue this independent IAAC issue specifically and distinctly, it has waived its challenge to the district court’s grant of relief on Ground 11.
B
Loher also persuasively argues that the State waived its challenge to Lo-her’s Apprendi claim.
“ ‘As a general matter, a litigant must raise all issues and objections’ before the trial court. Thus, in the ordinary course, a party who does not complain of an issue in the district court forfeits his right to review of that issue on appeal.” Bastidas v. Chappell, 791 F.3d 1155, 1159 (9th Cir. 2015) (alteration omitted) (quoting Freytag v. C.I.R., 501 U.S. 868, 879, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)). “While ‘failure to object to a magistrate judge’s factual findings waives the right to challenge those findings, it is well settled law in this circuit that failure to file objections ... does not automatically waive the right to appeal the district court’s conclusions of law,’ but is rather ‘a factor to be.weighed in considering the propriety of finding waiver of an issue on appeal.’ ” Id. (alterations omitted) (citing Miranda v. Anchondo, 684 F.3d 844, 848 (9th Cir. 2012)).
Here, the district court adopted the magistrate’s recommendation to grant relief on Loher’s Apprendi claim because Hawaii did not object to that recommendation. Loher VI, 23 F.Supp.3d at 1186. But Hawaii did more than fail to object to the magistrate’s legal conclusion. The State affirmatively requested that the district court “adopt the Magistrate Judge’s findings and recommendations,” without any qualification or reservation. Cf. Myers, 804 F.3d at 1254 (addressing invited error). Hawaii’s failure to object and its affirmative request invited the district court to adopt the magistrate’s conclusion on the Apprendi claim and deprived this court of the considered views of the district court on this issue. The State’s failure to object and its affirmative invitation to adopt the magistrate’s recommendation constitute waiver of its challenge to Loher’s Appren-di claim.
V
Because Loher prevails on his IAAC and Apprendi claims, but not on his Brooks claim, we must remand for further proceedings. We provide the following guidance for the district court to consider in fashioning the remedy.
A
A “court has broad discretion in conditioning a judgment granting habe- *1122 as relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of ha-beas corpus matters ‘as law and justice require.’ ” Hilton v. Braunskill, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). “More specifically, a court may issue a conditional writ that requires the state to release a petitioner unless it takes some other remedial action, such as retrial of the petitioner.” Lujan v. Garcia, 734 F.3d 917, 933 (9th Cir. 2013).
“The court’s discretion, however, is still bound by the Constitution....” Johnson v. Uribe, 700 F.3d 413, 425 (9th Cir. 2012). In the Sixth Amendment context, the Supreme Court has instructed that “remedies should be ‘tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.’ ” Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 1388-89, 182 L.Ed.2d 398 (2012) (quoting United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). “Thus, a remedy must ‘neutralize the taint’ of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.” Id. (quoting Morrison, 449 U.S. at 365, 101 S.Ct. 665). “The court’s remedy ‘should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred.’ ” Johnson, 700 F.3d at 425 (quoting Chioino, 581 F.3d at 1184).
B
Here, having granted relief on all three grounds, the district court ordered Hawaii to release or to retry Loher. Loher VI, 23 F.Supp.3d at 1200-01. Such remedy was “tailored to the injury suffered from” a Brooks violation, which results in a presumptively unfair trial. See Bell v. Cone, 535 U.S. 685, 695-96 & n. 3, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing United States v. Cronic, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (listing Brooks as a case in which a presumptively unfair trial resulted)). Because the writ will now be granted solely with respect to the Apprendi and IAAC claims, a new trial would no longer be tailored to such constitutional violations and would improperly grant Loher a windfall. As a result, on remand, the district court’s conditional writ should not require the state to release or retry Loher.
C
We conclude that the appropriate remedy for a sentencing error such as an Apprendi violation is resentencing “utilizing a constitutionally sound procedure.” See Chioino, 581 F.3d at 1186 (concluding that resentencing by the state trial court is the appropriate remedy for a violation of Apprendi’s progeny, Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007)).
D
The appropriate remedy is not as clear for ineffective assistance of appellate counsel.[13] The district court should consid *1123 er the appropriate remedy in light of supplemental briefing. On remand, we suggest that the district court consider Robbins v. Smith, 152 F.3d 1062, 1068-69 (9th Cir. 1997), rev’d on other grounds, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); Lynch v. Dolce, 789 F.3d 303, 320 (2d Cir. 2015) (“In general, the appropriate remedy for ineffective assistance of appellate counsel is to grant a new appeal.”); and, obviously, any other authorities that the parties bring to its attention.
In conclusion, we remand to the district court with instructions to modify its conditional writ to require Hawaii to release Loher or to provide him with resentencing within a reasonable period of time. In addition, the district court should consider what additional condition is required to remedy the ineffective assistance of Lo-her’s appellate counsel.[14]
VI
For the foregoing reasons, the district court’s judgment is AFFIRMED IN PART, REVERSED IN PART, and this case is REMANDED WITH INSTRUCTIONS. Each party shall bear its own. costs on appeal.

. The facts are from the record and various court opinions, including: State v. Loher, No. 24489, 2003 WL 1950475 (Haw. Ct. App. Apr. 21, 2003) (Loher I)-, State v. Loher, No. 26000, 2005 WL 335234, at *3 (Haw. Ct. App. Feb. 11, 2005) (Loher II); Loher v. State, 193 P.3d 438, 455 (Haw. Ct. App. 2008) (Loher III); Loher v. State, No. 29818, 2011 WL 2132828 (Haw. Ct. App. May 31, 2011) (Loher IV); Loher v. Thomas, Civ. No. 11-00731, 2013 WL 8561780 (D. Haw. Oct. 2, 2013) (Loher V); Loher v. Thomas, 23 F.Supp.3d 1182 (D. Haw. 2014) (Loher VI).

. Trial days appear to last until 4:30 p.m.

. In Tachibana v. State, the Hawaii Supreme Court held that, in every criminal case where the defendant does not testify, the trial court must engage in a colloquy with the defendant, advising him of his constitutional right to testify, and obtaining an on-the-record waiver of that right. See 79 Hawai’i 226, 900 P.2d 1293, 1303 (1995).

. However, the Hawaii ICA concluded that those “exceptions” to Brooks did not apply in Kido’s case. Id. at 619-20. The court reversed and remanded for a new trial. Id. at 622-23. In Sale, the Hawaii ICA distinguished Kido and held that the trial court did not violate Brooks. Sale, 133 P.3d at 826-27.

. While our focus above is properly on “whether the applicable Supreme Court law leaves the issue raised by the petitioner open or resolves it,” Crace v. Herzog, 798 F.3d 840, 848 n. 3 (9th Cir. 2015), we note that many state and federal courts have reached conclusions that support the Hawaii ICA's decision. As the Hawaii ICA recognized, numerous courts, including our own, "have adopted a narrow interpretation of Brooks and a corresponding emphasis on the discretion of trial courts to set the order of proof.” Loher IV, 2011 WL 2132828, at *7 n. 5 (citing Menendez v. Terhune, 422 F.3d 1012, 1031 (9th Cir. 2005) ("Apart from its limited holding, Brooks did not ‘curtail in any way the ordinary power of a trial judge to set the order of proof.’ ” (quoting Brooks, 406 U.S. at 613, 92 S.Ct. 1891) (alteration omitted))); United States v. Singh, 811 F.2d 758, 762-63 (2d Cir. 1987); Harris v. Barkley, 202 F.3d 169, 173-74 (2d Cir. 2000) (per curiam); Juniel v. Felkner, No. C 07-4542 RMW (PR), 2010 WL 1912031, at *7 (N.D. Cal. May 11, 2010); People v. Lancaster, 41 Cal.4th 50, 58 Cal.Rptr.3d 608, 158 P.3d 157, 194 (2007); People v. Walden, 224 P.3d 369, 376 (Colo. Ct. App. 2009); Book v. State, 880 N.E.2d 1240, 1248-50 (Ind. Ct. App. 2008); People v. Smith, 260 A.D.2d 253, 690 N.Y.S.2d 6, 7 (1999); see also Loher TV, 2011 WL 2132828, at *8 n. 6 (citing, among others, United States v. Leon, 679 F.2d 534, 538 (5th Cir. 1982); Johnson v. Evans, No. CIV S-05-1223, 2009 WL 5030661, at *14-15 (E.D. Cal. Dec. 16, 2009); State v. Turner, 252 Conn. 714, 751 A.2d 372, 384 (2000)).
In Harris, a federal habeas case, the Second Circuit concluded that, "[njotwithstanding ... some of the broad language the Court employed in Brooks, ... Brooks does not constitute a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony.” Harris, 202 F.3d at 173. The Second Circuit thus expressly rejected the contention in Judge Smith’s partial dissent that Broolcs announced a "general principle of constitutional law” “that a criminal defendant's rights are violated when a trial judge restricts ‘whether, and when in the course of presenting his defense, the accused should take the stand.’ ” Smith Op. at 1127 (quoting Brooks, 406 U.S. at 613, 92 S.Ct. 1891). Next, the Second Circuit distinguished the categorical, statutory rule in Brooks from an exercise of the “trial court's ‘broad power to cope with the complexities and contingencies’ of trial.” Ld. at 174 (quoting Singh, 811 F.2d at 762-63).

. As the Hawaii ICA observed, many courts have "held that a trial court may require the defendant to testify, if at all, while awaiting the arrival of other defense witnesses.” See Loher IV, 2011 WL 2132828, at *7 n. 5 (citing Walden, 224 P.3d at 375-76 (recognizing this as a separate category of cases finding no Broolcs violation and citing three such state-court decisions); Juniel, 2010 WL 1912031, at *5-7; Lancaster, 58 Cal.Rptr.3d 608, 158 P.3d at 194; Soto v. State, 751 So.2d 633, 639 (Fla. Ct. App. 1999); Book, 880 N.E.2d at 1243-50; State v. Amos, 262 N.W.2d 435, 437 (Minn. 1978); Smith, 690 N.Y.S.2d at 7).
In Harris, defense counsel could not procure the presence of a police officer until the following day, and the trial court ordered the defendant to take the stand immediately. See 202 F.3d at 171-72. The Second Circuit recognized that a defendant’s responsibility for the lack of other defense witnesses distinguished his circumstances from those in Brooks: "Harris, unlike Brooks, bears primary responsibility for the situation that engendered the ruling of which he now complains.” Id. at 174; see also Turner, 751 A.2d at 382-84 ("Brooks does not apply here because the order of witnesses resulted solely from Corey Turner’s late disclosure of his alibi and his own statements to the court.”).

. Again, several courts have reached such a conclusion. For example, in Walden, the "prosecution completed its case at about 4 p.m. on the first day of trial.” 224 P.3d at 372. The Colorado Court of Appeals concluded that the trial court had not violated Broolcs when it ordered Walden to testify that afternoon because his expert was not available. See id. at 377-78. It noted that the trial “court’s decision was influenced by its concern that the jury’s time not be wasted. This was a legitimate reason supporting the court’s exercise of discretion over the order of witnesses because the court would have been required to adjourn for the day if defendant were to testify after his expert.” Id. at 377. Whatever portion of Walden’s trial day remained after 4 p.m., it was likely less than the two hours left in Loher’s first trial day. See also Leon, 679 F.2d at 538 ("Brooks does not control here. The judge was merely trying to keep the trial from stalling in mid-afternoon.”); Smith, 690 N.Y.S.2d at 7 ("The court exercised its power to control the flow of the proceedings in the interest of preventing the morning session of the trial from being wasted, and defendant’s decision to testify was made with the assistance of counsel.”); Soto, 751 So.2d at 638-39 (Brooks was "inapplicable” where, having granted a 30-minute continuance, the trial judge "simply told the defense, when it could produce no other witnesses, that if the defendant was going to testify, he would have to take the stand. Otherwise, there were no other witnesses available.”).

. Indeed, remanding for counsel to explain his conduct comports with the federal test for ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668, 687-95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Smith v. Robbins, 528 U.S. 259, 285-88, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (confirming that Strickland is the proper standard for IAAC claims). There, the Court explained that "every effort [must] be made ... to reconstruct the circumstances of counsel’s challenged conduct! ] and to evaluate the conduct from counsel’s perspective at the time.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Obtaining counsel’s explanation of his own conduct and perspective is certainly a reasonable part of such an evaluation.

. The trial court made the latter point when ruling: “The Court believes that it was the responsibility ... of counsel to determine when witnesses would be available. Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.” See also Tallman Op. at 1124; see generally 2 John Toothman & Douglas Danner, Trial Practice Checklists § 9:51, ¶ 6, Westlaw (database updated March 2016) ("Another complication in defendant’s case is that counsel generally does not know when plaintiff will rest and defendant’s case will begin: a. plaintiff may make an estimate of when its case will be completed, but these estimates may not be accurate, b. different judges also have different habits regarding the length of a trial day, c. some judges will be lenient in postponing the beginning of defendant's case if plaintiff finishes early, but others will not, d. defense counsel should have witnesses available at the earliest possible time the plaintiff may rest, even if this means that the witnesses may be waiting for some time....”).

. Judge Tallman's partial dissent argues that we have discretion to consider issues not argued specifically and distinctly in an Opening brief. Tallman Op. at 1124. But such discretion relates to a different type of waiver — our " ‘general rule' against entertaining arguments on appeal that were not presented or developed before the district court.” In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010) (citation omitted); see United States v. Northrop Corp., 59 F.3d 953, 957 n. 2 (9th Cir. 1995) (addressing waiver of issue "raised for the first time on appeal”).

. Because the district court granted relief on Ground II, Judge Tallman’s partial dissent errs when it suggests that Loher’s entitlement to habeas relief on his IAAC claim depends on whether the Hawaii ICA’s decision in Loher IV was “contrary to, or an unreasonable application of, Strickland." Tallman Op. at 1125. At this stage, Loher is entitled to relief on his IAAC claim unless Hawaii argues successfully that the district court erred in granting such relief. Hawaii has not raised any argument on this issue.

. The approach suggested in Judge Tail-man's partial dissent, considering the merits of the IAAC claim, raises numerous questions for which the State has supplied no arguments. For example, did the Hawaii ICA even determine whether a reasonable probability exists that Loher would have prevailed in his direct appeal? One could argue that Loher TV applied a more burdensome standard by rejecting the IAAC claim on the ground that the Brooks claim was not actually meritorious in the post-conviction appeal on the basis of evidence that was not in the trial record. Loher IV, 2011 WL 2132828, at *10. If the Hawaii ICA applied the wrong standard, what would we conclude on de novo review? Did counsel's performance fall below an objective standard of reasonableness? If the Hawaii ICA had considered solely the trial record, is there a reasonable probability that it would have ruled in favor of Loher on his direct appeal, as it did for Kido? With respect to these questions, Loher raises non-trivial arguments, which the State makes no attempt to rebut. Ultimately, we need not consider such contentions or answer any of these questions because the State has waived the issue by failing to raise it its opening brief.

. We leave it to the district court to decide whether the principles delineated in the Sixth Amendment cases in Section V.A should apply to the remedy for ineffective assistance of appellate counsel, which constitutes a violation of the Due Process Clause of the Fourteenth Amendment. See Tamalini v. Stewart, 249 F.3d 895, 902 (9th Cir. 2001) (discussing Martinez v. Ct. App. of Cal., 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) ("[T]he Sixth Amendment does not apply to appellate proceedings....”)); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010). We note that we have previously determined that it is "sensible” to apply such principles to the remedy for a violation of the Fifth Amendment. See Lujan, 734 F.3d at 934-36.

. Contraiy to the suggestion in Judge Tail-man's partial dissent, Tallman Op. at 1125-26, the Hawaii ICA has not considered, and Loher has not yet litigated, whether Loher's trial record makes out a meritorious Brooks claim. Loher IV decided that Loher's Brooks claim was not meritorious on the basis of the post-conviction record, and Section III of this opinion merely concludes that such decision was not objectively unreasonable. That is a low bar to clear. Moreover, Section III says nothing about Loher TV's conclusion that Loher would not have prevailed in his original direct appeal, based on the trial record, if his counsel had raised a Brooks claim or Loher TV's consideration of evidence outside the trial record for such prejudice analysis. To the extent that the district court's remedy requires the State and the state courts to expend resources to address Loher’s Brooks claim, the blame will lie squarely with the State for failing to argue for reversal of the district court’s grant of the writ with respect to Loher's IAAC claim.